[No. 25590. Department Two. November 22, 1935.]

ALICE M. HAIR, *Appellant*, v. OLD NATIONAL INSURANCE AGENCY, INC., *et al., Respondents.*[1]

[1]Reported in 51 P. (2d) 398.

478

*Albert H. Solomon* and *Carkeek, McDonald & Harris,* for appellant.

*Edge & Wilson* and *M. E. Jesseph,* for respondents.

BEALS, J.—Plaintiff herein, Alice M. Hair, a resident of Spokane, was appointed an agent of the United States Fidelity & Guaranty Company of Baltimore (hereinafter referred to as the insurance company) during the spring of 1918, and remained an agent of the company until December 31, 1932, when her principal revoked her agency. Union Trust Company, a corporation, having its headquarters in Spokane, was designated as an agent of the insurance company during the fall of 1919; the defendant Old National Insurance Agency, Inc., a corporation, succeeding to its business late in the fall of 1929. Defendants W. J. Kommers and Will A. Kommers, father and son, were officers, first, of the Union Trust Company, and then of Old National Insurance Agency, Inc., and, generally speaking, managed the affairs of these corporations.

Insurance agency contracts, such as those here in question, are terminable upon short notice at the option of either party.

During the course of her agency, Miss Hair built up a good business, writing for her principal accident and health insurance and, after November, 1927, physicians' liability insurance. The two corporations managed by the Messrs. Kommers wrote a large amount of insurance for the insurance company, after 1927, writing fewer policies than Miss Hair of the two forms of insurance in which she specialized.

During the month of November, 1932, the insurance company terminated Miss Hair's authority to write physicians' liability insurance, whereupon Miss Hair wrote to her principal the following letter:

"Yours of November 26, 1932, received. You may not be acquainted with the laws of this state, but the supreme court has established the ownership of expirations,—they belong to the agent and are considered the one tangible asset that can be sold. Do you contemplate furnishing the Union Trust Company, directly or indirectly, with any expirations or records or any data concerning the insurance under Physicians' Liability, Dentists' Liability, Hospital Liability or Pharmacy Liability that I have written?

"My attorney here is ready to bring a damage suit and I must know just what portion of the information used by the Union Trust Company has been furnished by the Home Office of the United States Fidelity and Guaranty Company. ALICE M. HAIR."

Upon receipt of this letter, the insurance company telegraphed Miss Hair, canceling her agency agreement and terminating her agency *in toto*.

Approximately six months following the termination of her agency, plaintiff instituted this action, naming as defendants Old National Insurance Agency, Inc., two other corporations, Mr. and Mrs. W. J. Kommers, and Mr. and Mrs. Will A. Kommers, alleging in her

amended complaint, upon which the action was tried, her agency for the insurance company; that she had built up a profitable business as such agent; that the corporations above named were also agents for the insurance company; and that the Messrs. Kommers managed the business affairs thereof. Plaintiff then alleged that the defendants entered into a conspiracy for the purpose of ruining her business and procuring the cancellation of her contract of agency; and that early in January, 1933, defendant Will A. Kommers uttered slanderous statements concerning plaintiff, which were set forth with particularity in her complaint.

Plaintiff also alleged that, in the course of the conspiracy which she pleaded, the defendants made to the insurance company false, libelous and defamatory statements concerning her, and, finally, that defendants Kommers, during the fall of 1932, and previously, stated to the insurance company that they would transfer their insurance business to another company if the insurance company did not discharge plaintiff. Plaintiff then alleged that, as a result of the conspiracy which she pleaded, the insurance company revoked her agency, to her damage in the sum of forty thousand dollars. She then pleaded that she had lost other business and been injured in her good name to her damage in the further sum of forty thousand dollars.

The trial court sustained demurrers to the complaint interposed by two of the defendant corporations, and the action proceeded to trial before the court, sitting with a jury, as against Old National Insurance Agency, Inc., and the defendants Kommers. At the close of plaintiff's case, the defendants interposed a challenge to the sufficiency of the evidence and asked for judgment in their favor as matter of law, which motion the court granted.

Plaintiff's motion for a new trial having been denied, judgment was entered dismissing the action, from which plaintiff has appealed, assigning error upon the denial by the trial court of her motion for a new trial based upon the ground that the judge who presided was disqualified because of interest in the result of the action, plaintiff also contending that her motion for new trial should have been granted for other reasons. Error is also assigned upon the exclusion of evidence which plaintiff offered and the admission of evidence offered by defendants. Plaintiff also contends that the trial court erred in sustaining the challenge to the sufficiency of the evidence, in withdrawing the case from the jury, and dismissing the action.

Appellant complains of the trial court's ruling in sustaining objections to questions propounded to her by her counsel concerning conversations between herself and several executive officers of the insurance company. These conversations took place after the revocation of appellant's agency and while her application for restoration was pending before the home office. Appellant argues that statements made by these officers of the insurance company should have been admitted as showing the state of mind of the insurance company in first reducing appellant's authority and then in canceling her agency, and also as tending to show that respondents were responsible for the termination of appellant's agency by the insurance company. Appellant frankly admits that the insurance company could terminate her agency at any time. It was undoubtedly as free as was she to sever the business relation existing between the parties.

Appellant offered evidence concerning statements made by the insurance company's officers or agents made after the cancellation of appellant's agency by competent authority. These statements were not ma-

terial or competent and were clearly hearsay, even if relevant to any issue to be tried.

It nowhere appears that the direct evidence of the insurance company's officers could not have been procured; indeed, the record indicates the contrary. Appellant argues that, in conspiracy cases, some of the strict rules of evidence are relaxed. 12 C. J. 634-6, §§ 227-8-9. This is quite true, but under no theory of law was the evidence now under discussion admissible.

Appellant next argues that testimony brought out on her cross-examination concerning trouble between appellant and two of her former landlords was improperly admitted. During the year 1925, appellant moved into an office in the Old National Bank Building, of which building Mr. W. J. Kommers was in charge. Appellant testified at length concerning her difficulties with the Messrs. Kommers, claiming that she had been unfairly treated by them, and that they had manifested a desire to embarrass and hamper her in the prosecution of her business. In her amended complaint, appellant alleged that Mr. W. J. Kommers caused her tenancy in the building above referred to to be terminated.

Appellant testified at considerable length concerning this and other similar matters, and on cross-examination admitted that, when she moved, she owed some rent, and that, during her tenancy, she had had trouble with some of the employees, who, she stated, had been instructed to annoy her. She was later asked on cross-examination if she had not previously had difficulties with the managers of two other office buildings in the city of Spokane, in which she had been a tenant.

Appellant was continually protesting that she was desirous of getting along well with everyone, and it was clearly proper to ask her on cross-examination if she had not on two prior occasions had trouble with

her landlords. From appellant's answers, it appears that such was the case, she frankly admitting that her tenancy in the two buildings referred to had resulted in difficulties between herself and the managers, and that she had been asked to leave by one and had sued the other. The cross-examination to which appellant objects was clearly proper.

The main question presented is, of course, whether or not the evidence introduced by appellant was sufficient to require the denial of respondents' motion for judgment in their favor, as matter of law. Appellant, in her amended complaint, in considerable detail charges respondents Kommers with having conspired to ruin her business as representative of the insurance company. She charges that this conspiracy succeeded, and that, because of the unlawful acts of respondents, she lost her lucrative agency as the insurance company's representative.

Appellant also charges that she lost other insurance business and, because of acts of respondents, suffered damage in her good name and character. We find no evidence supporting these latter charges, and apparently appellant confines her argument to that phase of the case involving her loss of the insurance company's agency.

It clearly appears that both appellant and respondent Old National Insurance Agency, Inc. (hereinafter referred to as respondent corporation), and its predecessor, Union Trust Company, a corporation, held agency contracts with the insurance company authorizing them, respectively, to sell certain lines of insurance. Neither agency was exclusive. Manifestly, the interests of agents, both representing the same company in the same territory, would occasionally clash. Such a situation will generally result in ill feeling between the two agencies.

Respondent Will A. Kommers was the active manager of respondent corporation's insurance business, while respondent W. J. Kommers exercised supervisory authority over its business affairs, as well as over the Old National Bank Building, in which, subsequent to 1925, appellant occupied office space. It appears from letters introduced as exhibits that, for some time, respondents had been complaining of appellant to the insurance company, stating that her activities resulted in the creation of difficult and annoying situations. Under date February 27, 1933, the San Francisco attorney for the insurance company wrote appellant as follows:

"Dear Miss Hair:

"I was referred to Mr. Philip Lee as the one with whom to discuss the question of your agency at Spokane.

"Mr. Lee advises me that Mr. William Kommers had written to the Home Office and stated that unless your agency was cancelled the Old National Insurance Agency would terminate its contract, and that since the volume of their business was such that they did not want to lose it, they were forced to cancel your agency. I stated to Mr. Lee that I understood that Mr. Kommers was not particularly opposed to your continuing to write Accident and Health for the company, to which Mr. Lee answered that if such were the case if you would have Mr. Kommers write to the Home Office the matter would be taken up by the executives there and passed upon.

"For your information the executives from the Home Office who were here in San Francisco were Mr. Howard Bland, Mr. Philip Lee, and Mr. Joseph Matthia, and, as above stated, this matter was left entirely to Mr. Lee. Mr. Lee expressed no opposition whatever to you or to the business which you wrote, but stated that because of the position taken by the Old National Insurance Agency the Home Office felt compelled to take the action which it did. Mr. Lee gave no assurance what decision the Home Office ex-

ecutives would reach even if Mr. Kommers should write the letter stating that he had no objections to your Accident and Health contract being renewed.

"Judging from what Mr. Lee said, I think this is the only avenue you have by which you can get your Accident and Health contract reinstated.

"I assure you I did all I could on your behalf and I hope it may work out all right.

"You probably know that the Home Office executives left San Francisco for Portland on the night of February 26th, and I believe will be there until some time Wednesday, March 1st.

"Yours very truly,<br>"Horace W. B. Smith."

It may well be argued that the foregoing letter, in so far as this action is concerned, constitutes hearsay upon hearsay; but the defendant Will A. Kommers refused to deny that he had written some such letter, and, for the purposes of this opinion, we will assume that he did so. The situation presented, then, is as follows: One of two agents representing a common principal states to the principal that he will surrender his agency unless the other agency is terminated.

It is difficult to understand how the making of such a statement could be made the basis of an action by the agent whose contract is terminated by the principal as the result of the alternative offered. The loss suffered would be *damnum absque injuria*. The matter was one with which the respondents were directly concerned. They were not gratuitously attempting to injure appellant by interfering in a matter in which they were nowise interested. If respondents felt (and it nowhere appears that they were not sincere in delivering their ultimatum) that they did not desire to longer represent the insurance company unless appellant's activities were restricted, they were perfectly justified in saying so and allowing the insurance company to decide what action it would take.

It is evident that respondents were not particularly concerned with appellant's authority to write accident and health insurance. Their principal objection, according to the evidence upon which appellant chiefly relies, was to her writing physicians' liability insurance.

As far as the evidence shows, had appellant not written to the insurance company the letter above quoted, her authority to sell health and accident insurance would not have been revoked. Certainly, upon receiving appellant's letter, the insurance company would naturally cancel appellant's agency. Appellant brought about that result by her own indiscretion.

It is, of course, true, as argued by appellant, that a conspiracy need not be proved by direct and positive evidence, and that a finding that a conspiracy existed may be based upon circumstantial evidence. *American Savings Bank & Trust Co. v. Bremerton Gas Co.*, 99 Wash. 18, 168 Pac. 775; *Karr v. Mahaffay,* 140 Wash. 236, 248 Pac. 801.

Appellant also relies upon the case of *Eyak River Packing Co. v. Huglen,* 143 Wash. 229, 255 Pac. 123, 257 Pac. 638, in which this court found no error in the following instruction:

" 'A combination which is lawful within itself may become a conspiracy when the purpose in view is unnecessarily to ruin or damage the business of another merely because of the other's refusal to do an act against its own will or judgment'."

The facts in the case cited were so utterly different than those here present that the case is not here in point.

Much of appellant's testimony concerns the question of whether or not she represented the insurance company as its general agent; she contending that she came within this classification, while evidently respondents were of the opinion that she did not. In our

opinion, the question of whether or not appellant held a general agency or one more restricted in its scope is not important. There can be no question but what the insurance company might have two general agents in the same territory, if it desired to do so. We assume that respondents had no greater rights than appellant, and certainly they had no authority over her nor any right to control her activities. Appellant and respondents each functioned in the same sphere of influence, each independent of the other, necessarily in active competition, save in so far as respondents refrained from seeking business of the classes written by appellant, with the practically inevitable result that ill feeling and trouble ensued.

Appellant relies upon the case of *Berry v. Donovan,* 188 Mass. 353, 74 N. E. 603, 108 Am. St. 499, 5 L. R. A. (N. S.) 899, where it appeared that an employer of labor had agreed with the representative of a union that he would operate a closed shop. As a result of this agreement, an employee, not being a member of the union, upon its objection to his continued employment, lost his position. It was held that the latter could recover damages from the union representative. In the case cited, the defendant was nowise concerned in the employer's business. He was an outsider, seeking to establish a rule of employment in which he was not personally interested. The case cited would be in point if one of two employees had advised the employer that he must choose between the other employee and himself, but the question determined is not parallel to that here presented. In the course of its opinion, the Massachusetts court used the following language:

"The only argument that we have heard in support of interference by labor unions, in cases of this kind, is that it is justifiable as a kind of competition. It is true that fair competition in business brings persons into rivalry, and often justifies action for one's self,

which interferes with proper action of another. Such action, on both sides, is the exercise by competing persons of equal conflicting rights. The principle appealed to would justify a member of the union, who was seeking employment for himself, in making an offer to serve on such terms as would result, and as he knew would result, in the discharge of the plaintiff by his employer, to make a place for the new comer. Such an offer, for such a purpose, would be unobjectionable. It would be merely the exercise of a personal right, equal in importance to the plaintiff's right.''

Appellant strongly relies upon the case of *Jones v. Leslie,* 61 Wash. 107, 112 Pac. 81, 48 L. R. A. (N. S.) 893, Ann. Cas. 1912B, 1158, in which this court held that the right of employment should be considered as the property of the one employed. It appeared that the plaintiff, having been employed by one Leslie, agreed to work for Steeves, who had a contract to haul for a cracker company; that Leslie notified the cracker company that, if the latter permitted Steeves to employ plaintiff, Leslie would withdraw his patronage from the cracker company, and that the latter thereupon caused Steeves to refuse to employ plaintiff; whereupon plaintiff was compelled to remain idle for a considerable period of time. It was held that the evidence presented a question on which the jury should pass. In the case cited, the facts differ basically from those here present. The question was practically one of blacklisting by one who had no lawful concern with the matter of plaintiff's employment.

Other authorities are cited by appellant, but we fail to find that any thereof support her contention that her evidence shows that any actionable wrong against her was committed by respondents.

Shortly after January 1, 1933, and after the severance of appellant's relations with the insurance company, four doctors, who had taken out liability insurance through appellant, called upon respondent Will A.

Kommers, seeking information concerning the termination of appellant's agency. Of course, nothing said at that time had anything to do with the cancellation of appellant's agency, and it clearly appears that Mr. Kommers was then willing to endeavor to have appellant's authority to write accident and health insurance restored. As appellant shortly after this time indicated her intention to bring this action, Mr. Kommers naturally interested himself no further on her behalf.

Generally speaking, the four physicians testified that respondent Kommers told them that his company had had difficulties because of appellant's activities in writing physicians' liability insurance, and that respondents had decided that, if they were to represent the insurance company, appellant must cease writing that class of policy. Mr. Kommers also stated that appellant claimed to be the insurance company's general agent, when in fact she had no such authority, and that she had made untrue statements concerning respondents. Appellant relies strongly upon the testimony of the physicians as to what respondent Will A. Kommers said to them, but we fail to find that any statement made by Mr. Kommers entitles appellant to go to the jury upon the issues in this case.

The evidence clearly indicates that, in writing physicians' liability insurance, appellant was extremely active. Under date February 28, 1933, she submitted to an officer of the insurance company a letter or memorandum comprising eighteen numbered paragraphs in support of her request that she be reinstated as agent for the accident and health insurance. Concluding this letter, she states:

"With that history before you, Mr. Matthia, Mr. Bland and Mr. Lee, surely you agree that the least you could do in fairness would be to reinstate my General Agency at once for Accident and Health so I may not

lose the March renewals. As the Union Trust had nothing whatever to do with that elimination, why further humiliate me by your asking their permission to allow me to receive a part of what I have earned? Have you not already paid sufficient tribute to their wicked greed?''

Paragraph 12 of this letter reads as follows:

''Finally eight doctors insured with Union Trust Co. notified me during 1932 that they wanted the unique service I rendered and desired to change to my office when their policies expired. (In each instance I insisted on a signed statement right on application requesting change of agents.)''

which clearly indicates that appellant was actively competing with respondents, and that the latter's clients were reinsuring with appellant. This is important as indicating that respondents would naturally be dissatisfied with the situation, whether appellant's method of obtaining business was in all respects fair or not.

■ Appellant called respondents W. J. Kommers and Will A. Kommers as adverse witnesses, and she, of course, had a right to contradict their testimony. Many of their statements, however, stand uncontradicted, and the trial court was justified in considering such testimony in ruling upon respondents' challenge to the sufficiency of the evidence. *Figari v. Olcese,* 184 Cal. 775, 195 Pac. 425, 15 A. L. R. 192.

It is also true that an unlawful conspiracy should not be inferred from acts and circumstances which are in themselves lawful and may be consistent with an honest purpose. *Dunlap v. Seattle Nat. Bank,* 93 Wash. 568, 161 Pac. 364.

Several courts have held that it is not an actionable wrong to secure the breach of a contract, provided fraud, force or coercion are not employed. *McCluskey v. Steele,* 18 Ala. App. 31, 88 So. 367; *Glencoe L. & G.*

*Co. v. Hudson Brothers Com. Co.,* 138 Mo. 439, 40
S. W. 93, 60 Am. St. 560, 36 L. R. A. 804; *Sleeper v.
Baker,* 22 N. D. 386, 134 N. W. 716, Ann. Cas. 1914B,
1189, 39 L. R. A. (N. S.) 864; *McGee v. Collins,* 156
La. 291, 100 So. 430, 34 A. L. R. 336.

We have carefully studied the record and appellant's
argument. We are thoroughly convinced that appel-
lant made no case entitling her to recover damages
from respondents, and that the trial court correctly
sustained respondents' challenge to the evidence and
dismissed the action.

 Finally, appellant contends that her motion for
a new trial, based upon her contention that the trial
judge was disqualified to sit in the cause, should have
been granted. It appeared near or after the close of
the trial that the trial judge had been a depositor in
the insolvent Old National Bank & Union Trust Co.;
that, at the time of the trial, he had received a dividend
on account of his claim, but that there was an unpaid
balance due him of about $1,300. It further appeared
that the respondent Old National Insurance Agency,
Inc., was a subsidiary of the Old National Corporation,
which was the holding company for the insolvent bank,
and that the stock of respondent corporation had been
pledged for the repayment of the unpaid balance due
to the depositors of the insolvent bank. A judgment,
then, against respondent corporation would, to some
extent, have lessened the value of its stock and thereby
had some remote effect upon the value of the assets of
the insolvent bank.

It appears that, until sometime during the progress
of the trial, it had not occurred to the trial judge that
it might be argued that, in law, he had some possible,
though small and remote, interest in the result of the
action. The good faith of the trial judge is not ques-

tioned, appellant merely arguing that it must be held as matter of law that he was interested in the result of the action and thereby disqualified from presiding at the trial.

A complete answer to appellant's argument that she should have a new trial is found in the fact that we hold, as matter of law, that appellant made no case. No other judgment could have been entered than that which was entered. The trial was fairly conducted, appellant was allowed to introduce much evidence which was incompetent and irrelevant, and no evidence which she was entitled to introduce was rejected; neither was any improper cross-examination of appellant's witnesses allowed over her objection.

The judgment entered was the only judgment which could be allowed to stand, and the same is accordingly affirmed.

STEINERT, BLAKE, HOLCOMB, and MAIN, JJ., concur.