[No. 27702.   Department One.   November 4, 1939.]

WALTER S. JAMIESON, *Appellant,* v. GEORGE W. TAYLOR
*et al., Respondents.*[1]

[1]Reported in 95 P. (2d) 791.

*Harold A. Seering,* for appellant.

*A. O. Burmeister* and *Gordon & Gordon,* for respondents.

SIMPSON, J.—Plaintiff brought this action to recover compensation for injuries to his person and damage to the Ford truck which he was driving, sustained in a collision with the automobile driven by the defendant Della Taylor.

Plaintiff alleges that the defendant Della Taylor was negligent in driving at an excessive and unlawful rate of speed; in failing to maintain a proper lookout; in failing to have the automobile which she was driving equipped with adequate brakes; in failing to apply her brakes or alter the course of her automobile when, by so doing in the exercise of ordinary care, a collision could have been avoided; in operating her automobile across an obstructed intersection at an excessive and unlawful rate of speed; and in operating the automobile in a reckless and careless manner so as to unnecessarily endanger and inconvenience other users of the highway.

In their answer, the defendants denied the charges of negligence and alleged that the plaintiff was guilty of contributory negligence, in that he failed to yield the right of way to the defendants, in operating his auto-

mobile in a careless manner, and in failing to maintain a proper lookout. The reply put in issue the allegations contained in defendants' answer.

Trial was had to the court, sitting with a jury, upon the issues presented. Plaintiff appeals to this court from a judgment of nonsuit entered at the close of plaintiff's case.

Appellant assigns as error the granting of defendants' motion for dismissal, the entering of judgment in favor of the defendants, and the denial of appellant's motion for a new trial.

The collision which engendered this litigation occurred at the intersection of Mountain highway and Military road, a short distance south of the city of Tacoma. Mountain highway is a paved arterial thoroughfare twenty feet wide, extending north and south. It is crossed almost at right angles by Military road, a graveled highway extending east and west. The view is unbroken from a point one mile north of the intersection to a point one-half to three-quarters of a mile to the south. The accident occurred about eleven a. m., November 7, 1938. Although there was some testimony of a light mist or rain at the time of the accident, it is not denied that the visibility for both parties was excellent.

Accepting as true appellant's version of the collision, and drawing all inferences from the evidence in his favor, it appears that appellant was proceeding south on Mountain highway in a light Ford pickup truck with the intention of turning left onto Military road at the intersection; and that respondents, in their De Soto sedan, were traveling north, also on Mountain highway. Already conscious of the approach of the car driven by respondent Della Taylor (who will hereafter be designated as sole respondent), appellant began preparations for the execution of his left turn at a

distance of fifty feet from the center of the intersection by signalling with outstretched arm and by looking to the rear for traffic approaching behind him. Appellant testified that there were no cars approaching from his rear.

His speed at this point was twenty-five miles per hour. At a distance of thirty-five feet from the center of the intersection, appellant had reduced his speed to eight to ten miles per hour. From that point, appellant took more particular notice of respondent's car, judged it to be four hundred fifty feet from the intersection, and noticed nothing unusual in the manner of its approach. Believing that he had ample time within which to complete his turn safely, appellant continued down his right-hand side of the road close to the center line, reducing his speed to five to eight miles per hour by the time he began his sharp turn to the left south of the center line of the intersection.

Appellant accorded to respondent's car no further consideration from the time when he was thirty-five feet north of the intersection until he had completed his turn and was broadside in the left or east lane of the highway. Appellant then became suddenly conscious of respondent's car bearing down on him at "terrific" speed. He increased his own speed, but was struck broadside after one-third to one-half of his truck had passed off the pavement. The point of contact was between the front of respondent's car and the right side of appellant's truck. The truck was overturned and pushed twenty-five to thirty feet by the impact.

Appellant himself was unable to ascertain the speed at which respondent was driving. His witness, Payne, a service station operator, who observed the accident from a short distance north of the intersection, testified that respondent's car was traveling at "a good rate of speed," and later stated that its speed was "probably

fifty." Respondent, called by appellant as an adverse witness, testified that her speed was twenty-five to thirty miles per hour, but admitted that she might have told the state patrolman after the accident that it was forty-five miles per hour. The patrolman testified that respondent had given her speed at forty to forty-five miles per hour; that she appeared stunned or shocked at the time. He further stated that the speed limit on Mountain highway was fifty miles per hour.

Respondent admitted that she didn't see appellant make his left turn; that she first became aware of his presence when he was only twenty feet from her and broadside across her line of traffic. She applied her brakes immediately, but was unable to avoid the crash. The testimony of appellant's witness, Payne, relative to the application of respondent's brakes, was purely negative. The state patrolman testified that there were no skid marks on the pavement, but pointed out that it was raining or drizzling, and that he had not arrived until twenty minutes after the accident occurred.

Respondent further testified that she was not sure at first but what appellant had approached the intersection on Military road from the west. She stated that she had noticed the approach of two cars on Mountain highway, but had dismissed them as no longer likely to change direction at the intersection. Respondent also testified that she had maintained a proper lookout at all times, and that the reason she did not swerve from her course to avoid the collision was that appellant's sudden appearance gave her no time to do so.

In order for appellant to succeed on this appeal, it is necessary that the record disclose sufficient evidence to take to the jury the question of respondent's negligence, and that the facts as established did not admit of the finding that appellant was guilty of contributory negligence as a matter of law.

222

The statutes applicable to the case at bar provide as follows:

"It shall be the duty of every person operating a vehicle upon any public highway and intending to turn from a standstill or while in motion intending to turn or stop, to give a timely signal from the left-hand side of such vehicle indicating the direction in which he intends to turn or that he intends to stop, as follows: If he intends to turn to the left he shall extend his arm in a horizontal position from the left side of such vehicle continuously for a reasonable length of time; . . . For the purpose of this section, a reasonable length of time shall be that time required to traverse a distance in feet equal to five times the maximum speed in miles per hour allowed by law during the approach to the point of turning or stopping.

"The foregoing signals and no others for turning shall be given by any person operating a vehicle and intending to change his driving position either to the left or to the right upon the proper driving portion of any public highway: . . ." Rem. Rev. Stat., Vol. 7A, § 6360-85 [P. C. § 2696-843] (Laws of 1937, chapter 189, p. 897, § 85).

"It shall be the duty of any operator of any vehicle upon entering an intersection and having signalled his intention as required by law to turn such vehicle to the left to look out for and give right of way to vehicles approaching in the opposite direction and thereby placed on his right, simultaneously approaching the given point within the intersection, whether such vehicle first enter and reach the intersection or not: *Provided,* This section shall not apply to a vehicle making such a left turn when having entered and turning to proceed upon an arterial highway." Rem. Rev. Stat., Vol. 7A, § 6360-89 [P. C. § 2696-847] (Laws of 1937, chapter 189, p. 899, § 89).

Under the terms of these statutes, appellant was the disfavored driver, respondent the favored driver.

The evidence relating to the speed at which respondent's car was moving cannot be said to establish

negligence on the part of respondent through excessive speed. The testimony failed to show that respondent's speed was in excess of the fifty miles per hour limit allowed on this arterial highway.

The respondent could lawfully have been moving at the rate of fifty miles per hour until such time as it reasonably should have become apparent to her that appellant was attempting to precede her through the intersection.

The designation of the speed as "terrific," made under the stress and confusion of the sudden and dangerous position in which appellant found himself, was in its very nature largely conjectural and lacked the certainty and precision necessary to impart a knowledge of any definite rate of speed.

Respondent's testimony to the effect that she maintained a proper lookout was not controverted by appellant. The trial court is justified in considering the uncontradicted testimony of an adverse witness called by the plaintiff in ruling upon defendant's challenge to the sufficiency of the evidence. *Hair v. Old Nat. Ins. Agency,* 184 Wash. 477, 51 P. (2d) 398. Fifty miles per hour is equivalent to almost seventy-five feet per second. As the trial judge pointed out, the respondent, at that speed, would hardly have had time to get her foot on the brake within a distance of fifty feet.

Appellant contends that the jury was entitled to have included all of the physical facts surrounding and resulting from the collision in their computation of the speed at which respondent was traveling, citing *Vercruysse v. Cascade Laundry Co.,* 193 Wash. 184, 74 P. (2d) 920. Attention of this court is directed particularly to the respondent's failure to swerve in order to avoid the accident, and to the fact that the appellant's car was turned on its side and pushed twenty-five to thirty feet. Appellant asserts that, from these

factors, the jury might reasonably have concluded that respondent was exceeding the speed limit.

It must be noted that, in the *Vercruysse* case, there was no testimony of disinterested witnesses establishing the speed of the favored driver. In the case at bar, appellant's same witness who testified that the truck was pushed twenty-five to thirty feet, also testified that respondent's speed was probably fifty miles per hour. In *Fisher v. Hemrich Brewing Co.*, 183 Wash. 489, 49 P. (2d) 1, 53 P. (2d) 1198, this court made the following statements:

"From the force, violence and results of the collision, appellant argues that it may be inferred from such evidence that the speed of the truck was much greater than thirty-five miles an hour, and that the testimony of the witnesses as to its speed was no more than estimates; citing *Osborn v. Seattle*, 142 Wash. 25, 252 Pac. 164; *Day v. Polley*, 147 Wash. 419, 266 Pac. 169; *Copeland v. North Coast Transportation Co.*, 169 Wash. 84, 13 P. (2d) 65; and *Gaskill v. Amadon*, 179 Wash. 375, 38 P. (2d) 229, to the effect that the jury might infer excessive speed from the violence of the impact and the results therefrom.

"The difficulty with that argument is that no such justifiable inference can be drawn from such circumstances and results, because of the positive evidence produced by appellant by eye witnesses as to the rate of speed of respondent's truck."

It is to be observed, in any event, that the fact that appellant's truck was pushed twenty-five to thirty feet north by the force of the collision is a physical factor not inconsistent with lawful speed on the part of respondent, when such factor is considered with an eye to other circumstances surrounding this accident, and to the lawful speed limit of fifty miles per hour.

In the exercise of due care, the respondent was not required to anticipate that appellant would make a left turn until he had complied with the law relative to

the giving of a signal indicating that he was going to turn at the intersection. She had the right to assume that appellant would obey the rules of the road and yield to her the right of way. The evidence discloses that respondent did nothing which confused or deceived appellant. She traveled on her side of the highway at a legal speed which was neither increased nor decreased. Clearly, as a matter of law, respondent was not guilty of any negligence.

It is elementary that plaintiff may not recover in an automobile collision case if his own negligence has contributed materially to the accident and to the injuries which he has sustained therefrom.

It is appellant's contention that the rules of law embodied in *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533, are apposite to the factual situation in the case at bar, and that application of those principles required submission of the question of appellant's contributory negligence to the jury. The *Hadenfeldt* case has been consistently followed by this court in a long, unbroken line of decisions. It has been applied not only to right angle intersection cases, such as the *Hadenfeldt* case itself, but also to left-hand turn intersection cases similar to the case at bar. *Vance v. McCleary,* 168 Wash. 296, 11 P. (2d) 823; *Sather v. Blodgett,* 169 Wash. 25, 13 P. (2d) 60; *Mercilliott v. Hart,* 173 Wash. 224, 22 P. (2d) 658; *Vercruysse v. Cascade Laundry Co., supra; Levine v. Owen Lumber Co.,* 196 Wash. 673, 84 P. (2d) 353.

In the *Hadenfeldt* case, *supra,* this court deduced the following principles from a construction of a statute similar to Rem. Rev. Stat., Vol. 7A, § 6360-89, which applies in the case at bar:

"(1) All rights of way are relative, and the duty to avoid accidents or collisions at street intersections rests upon both drivers.

"(2) The primary duty of avoiding such accidents rests upon the driver on the left, which duty he must perform with reasonable regard to the maintenance of a fair margin of safety at all times.

"(3) If two cars collide within the intersection, then they were simultaneously approaching a given point within the intersection, within the meaning of the statute, unless—

"(4) The driver on the left assumes and meets the burden of producing evidence which will carry to the jury the question of fact as to whether or no the favored driver on the right so wrongfully, negligently, or unlawfully operated his car as would deceive a reasonably prudent driver on the left and warrant him in going forward upon the assumption that he had the right to proceed."

It was held in the *Hadenfeldt* case, where the disfavored driver approached a busy city intersection from the north, and the favored driver approached from the west, striking the disfavored driver as he began to clear the intersection, that the disfavored driver had brought himself within paragraph (4) of the rule, and had made out a case for the jury on the question of his contributory negligence. The facts of the case disclose that the disfavored driver looked, saw the approach of the favored driver, and attempted to precede him across the intersection, believing he had ample time to do so safely. It was not seriously denied that the favored driver was exceeding the speed limit. It further appeared that the jury had a right to believe that the favored driver was as much as one hundred ninety feet west of the intersection when the disfavored driver started into the intersection, increasing his speed to twelve to fourteen miles per hour as he crossed. The intersection was an obstructed one, close to the central business district of the city of Seattle. Thus, the court found that the jury might properly conclude that the plaintiff was a reasonably prudent

driver on the left who had been deceived by the excessive speed of the driver on the right.

We have clearly demonstrated in two recent decisions, *Bowen v. Odland,* 200 Wash. 257, 93 P. (2d) 366, and *Delsman v. Bertotti,* 200 Wash. 380, 93 P. (2d) 371, that application of the exception or limitation [paragraph (4)] of the *Hadenfeldt* rule must be confined to fact situations which closely resemble those which obtained in the *Hadenfeldt* case. In *Bowen v. Odland, supra,* this court passed upon an instruction which embodied all of the conditions mentioned in the *Hadenfeldt* case and stated:

"Under the statute, the primary duty of avoiding a collision rests upon the driver on the left. The rule laid down by the fourth paragraph of the instruction above quoted is an exception to the general rule and should be applied only in special cases, when rendered appropriate by the evidence. The principle embodied in this paragraph applies in cases in which testimony has been introduced to the effect that the disfavored driver had an opportunity to observe and estimate the situation and actually did so, and further was deceived by some conduct of the other driver which led the disfavored driver to believe that he could proceed within a reasonable margin of safety, and that he was therefore warranted in going forward."

This court has recognized that there is an important distinction between the congested city intersection and open country driving.

In the *Hadenfeldt* case, it was stated:

"It is a well known fact that one looking to his right at an approaching car under such circumstances sees it coming toward him practically head-on, and oftentimes cannot judge accurately of its speed. The necessity for the constant moving of traffic and that the intersection be not blocked in either direction requires the driver on the left to decide almost instantly whether to proceed or stop. If, acting as a reasonably prudent man, he makes such observations as he can,

and there is nothing to warn him that the car approaching on the right is so far exceeding the speed limit as to endanger his progress, he must necessarily proceed in order to facilitate traffic. But if, on the other hand, there is anything in the situation which would warn a reasonably prudent driver that the car approaching on the right is out of control, or is so far exceeding the speed limit as to be actually within striking distance, then it is the duty of the driver on the left, notwithstanding the negligence and the violation of the law by the driver on the right, to yield the right of way in the interest of safety to all concerned.

"Appellants and *amicus curiae* contend for a stricter rule, placing the entire burden upon the driver on the left, but such a rule is, we fear, entirely impracticable, because, at busy intersections, the driver on the left might wait indefinitely, blocking his street entirely, and giving successive on-coming drivers on his right unlimited use of the intersection to the entire exclusion of opposing traffic."

In the case of *Roed v. Washington Laundry Co.*, 160 Wash. 166, 294 Pac. 1023, the facts disclose a right angle intersection collision at the conjunction of two country highways. The disfavored driver admitted uncertainty as to the speed of the favored driver approaching on his right, and testified that he speeded up a little in an attempt to precede the favored driver through the intersection. In affirming the judgment of the trial court in nonsuiting the disfavored driver on grounds of contributory negligence, this court said:

"Appellant contends that, under the decision of this court in the case of *Martin v. Hadenfeldt*, 157 Wash. 563, 289 Pac. 533, the evidence introduced by appellant made a case which the court should have submitted to the jury for its determination upon the facts. While it is true, as stated in the case cited, that 'all rights of way are relative, and the duty to avoid accidents and collisions at street intersections rests upon both drivers,' we deem this a proper case for the ap-

plication of the second of the rules laid down by this court to the effect that:

"' . . . the primary duty of avoiding such accidents rests upon the driver on the left, which duty he must perform with reasonable regard to the maintenance of a fair margin of safety at all times.'

"In the case at bar, there was no traffic to be impeded had appellant slowed down his car or stopped to allow the laundry truck to pass; there was not present the necessity, referred to in the *Martin* case, for the constant moving of traffic in order that congestion at the intersections of busy city streets may be avoided; and it would seem that appellant had every opportunity to observe the truck, estimate its speed, its distance from the intersection, and the time which would elapse before the truck would reach the same, or come 'within striking distance.' "

Factual differences distinguish the case at bar from the situation present in the *Hadenfeldt* case. Here, as in *Roed v. Washington Laundry Co., supra,* the collision occurred in the country rather than in the city.

It is not denied that appellant, in the instant case, had perfect visibility, and had an unobstructed view of the approach of the favored vehicle for a distance of at least one-half a mile south of the intersection. Under these circumstances, appellant was free from the need for making an instantaneous decision as to whether or no it would be reasonably prudent to attempt a crossing in front of the oncoming favored driver. Appellant was in a position where reasonable prudence dictated a more mature, less hastened decision than could be expected at a crowded urban crossing.

Appellant was bound to know that respondent could lawfully be approaching at the maximum speed allowed by law. Great speed suggests a greater margin of safety to the reasonably prudent man. Having a comparatively unlimited opportunity to observe the

approach of the favored vehicle, the appellant was in a position where he could gauge the speed at which it was traveling.

On the other hand, appellant's testimony is specific to the effect that he made but a single evaluation of respondent's potential challenge to the successful execution of his turn to the left. At a distance of thirty-five feet from the center of the intersection, appellant looked to the south, noticed the approach of respondent's car, noticed nothing unusual in its approach, and gauged its distance from the intersection to be one hundred fifty yards. He did not look again until he had proceeded well past the center of the intersection, had made a sharp left turn, and was broadside across respondent's lane of the highway. By that time, it was too late for either driver to avoid the collision.

In *Sather v. Blodgett, supra,* the judgment of the trial court nonsuiting the disfavored driver in a left turn case was affirmed by this court. In disposing of the contention of the disfavored driver to the effect that he could safely have preceded the favored driver through the intersection if respondent had not been exceeding the speed limits, the court said:

"This is of course but a conclusion, which carries but little weight, and it in no wise takes the place of the exercise of due care to ascertain at what speed the Blodgett car was approaching."

Appellant disclaimed any knowledge as to the exact speed at which respondent entered the intersection. He stated that he had no idea how fast the respondent's car was traveling at the time when he made his observation thirty-five feet north of the intersection; that he could not tell "how fast it was coming when driving toward or against it." His only direct statement was that he became conscious of its approach at terrific speed after he had completed his turn. Appellant ad-

mitted that he could have stopped almost instantly had he looked again just before crossing the yellow line. After making one estimate of the situation, appellant concluded that his clearance was adequate, and dismissed the factor of respondent's approach in complete reliance upon his original judgment.

The fourth paragraph of the *Hadenfeldt* rule requires that the disfavored driver assume and meet

". . . the burden of producing evidence which will carry to the jury the question of fact as to whether or no the favored driver on the right so wrongfully, negligently, or unlawfully operated his car as would deceive a reasonably prudent driver on the left and warrant him in going forward upon the assumption that he had the right to proceed."

Determination of the question of whether a reasonably prudent driver has been deceived in this manner depends upon the facts of each case. The evidence which appellant has produced in the case under consideration does not warrant jury consideration of the question of appellant's contributory negligence.

Appellant cites many cases in support of his contention that he conducted himself with reasonable prudence and allowed himself a fair margin of safety in executing his left turn. *Martin v. Hadenfeldt, supra; Martin v. Westinghouse Elec. & Mfg. Co.,* 162 Wash. 150, 297 Pac. 1098; *Teshirogi v. Belanger,* 167 Wash. 278, 9 P. (2d) 66; *Thompson v. Fiorito,* 167 Wash. 495, 9 P. (2d) 789, 12 P. (2d) 1119; *Brum v. Hammermeister,* 169 Wash. 659, 14 P. (2d) 700; *Eggert v. Schumacher,* 173 Wash. 119, 22 P. (2d) 52; *Hamilton v. Lesley,* 174 Wash. 516, 25 P. (2d) 102; *Swanson v. Sewall,* 183 Wash. 462, 48 P. (2d) 939; *Huber v. Hemrich Brewing Co.,* 188 Wash. 235, 62 P. (2d) 451.

In each of these cases, it was held that the question

of the contributory negligence of the disfavored driver was one properly to be submitted to the jury. Each case involves a right angle intersection collision where the lawful speed at which the favored driver might be approaching the intersection was no greater than twenty-five miles per hour.

*Martin v. Hadenfeldt, supra,* has already been dealt with. The case of *Martin v. Westinghouse Elec. & Mfg. Co., supra,* is an almost exact parallel to the case of *Martin v. Hadenfeldt.* The previous discussion of the latter case is equally applicable to both.

The remaining cases cited by the appellant may each be distinguished from the case at bar upon additional grounds. In *Teshirogi v. Belanger, supra,* the disfavored driver was engaged in crossing a city rather than a country intersection. Comparatively speaking, his vision was substantially limited. He had much less opportunity to evaluate his chances of a safe crossing. The disfavored driver looked to the right upon approaching the intersection, looked once again after reaching the center of the intersection and before crossing into the lane of the favored driver. He then became aware of the approach of the favored driver at a somewhat excessive rate of speed, but was confident that he could safely proceed. It further appeared in the *Teshirogi* case that, had the favored driver been looking, he could have safely passed behind the disfavored driver. While there was no independent testimony in this case that the favored driver was guilty of excessive speed, neither was there uncontroverted testimony, such as obtained in the case at bar, that the favored driver was traveling at a speed within the limits prescribed by law.

In the case of *Thompson v. Fiorito, supra,* the intersection was not within the city limits, but it was never-

theless an obstructed one. In addition, there was disinterested testimony tending to establish the fact that the favored driver was exceeding the speed limit, that he had deceived the disfavored driver by increasing his speed as he approached the intersection.

The facts of *Brum v. Hammermeister, supra,* are quite different from those present in the instant case. In the *Brum* case, plaintiff was the driver on the right, yet was the disfavored driver because he had just entered an arterial highway. Plaintiff proceeded directly across the arterial, and was struck by the favored driver after the front half of his car had passed off the pavement. The favored driver was approaching from the left, but was attempting to execute a left turn and thus change his direction to coincide with that of the disfavored driver. Taking the facts most favorable to the disfavored driver, the jury having found in his favor, it appears that the favored driver had a quarter of a mile to traverse during the time it took the disfavored driver to travel forty-nine feet at a speed of from five to ten miles per hour. These facts disclose a disfavored driver in a position much more advantageous than that which is enjoyed by the appellant in the case at bar. Also, as in *Teshirogi v. Belanger, supra,* there was no disinterested testimony placing the speed of the favored driver either above or within the limits prescribed by law.

The remaining cases upon which appellant relies are severally susceptible of further differentiation on each of several bases to which we have already devoted some attention, viz., the difference in traffic conditions between city and country intersections, comparative differences in extent of visibility and length of time within which to arrive at a reasonably prudent decision, and the fact that, in each of these cases, there was independent, disinterested testimony tending to

establish excessive speed on the part of the favored driver. The motion for nonsuit was properly granted.

The judgment is affirmed.

BLAKE, C. J., MAIN, MILLARD, and ROBINSON, JJ., concur.

