IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32064-2-III |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL JOE ROCHA, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

KORSMO, J. — This court granted interlocutory review of this aggravated first degree murder prosecution to determine if the public's right to open court proceedings was violated when the trial court considered information in a closed hearing that ultimately led the court to recuse. We conclude that the public right to open justice did not extend to the conveyance of information to a judge where there was not also a motion or request for recusal.

FACTS

Respondent Michael Rocha is one of two defendants separately charged with aggravated first degree murder in the Grant County Superior Court for the killing of Tracy Fulbright. Attorney N. Smith Hagopian of Wenatchee, was appointed to represent Mr. Rocha on September 29, 2013. Counsel journeyed to Ephrata for an omnibus hearing on October 15, 2013.

The Honorable Evan Sperline conducted the omnibus calendar. Because more time was needed to resolve the State's pending motion to consolidate the cases of the two defendants, the parties had agreed to continue the hearing two weeks. While awaiting their turn on the busy calendar, Mr. Hagopian received word that his firm had undertaken a case in Chelan County representing Judge Sperline's adult daughter. Concerned that the new case might create a conflict of interest for himself or for the judge, Mr. Hagopian advised the deputy prosecutor of his intention to ask the judge to close the courtroom to consider the matter. The deputy objected to any discussion that was not on the record.

The case was called and the prosecutor asked for a two week continuance of the motion. Mr. Hagopian then advised the court that he had an ethical matter to bring to the court's attention and asked that the courtroom be closed. After learning that the matter involved a new client and potential ethical impacts on defense counsel and the judge, the court indicated that the matter should be heard on the record. Judge Sperline then

2

inquired whether anyone present on the calendar objected to closing the courtroom in order to hear the matter. Hearing no objection, the court ruled that the matter would be heard in a closed courtroom at the end of the calendar. Continuing with the omnibus calendar, the judge then granted the continuance of the hearing after learning that defense counsel agreed with the request.

Defense counsel then went to the elected prosecutor, Angus Lee, and asked him to agree to allow an off-the-record discussion at sidebar or in chambers. Mr. Lee instead agreed with his deputy that the matter should be on the record and went to the courtroom. When the matter was called, Mr. Lee asked the court to reconsider the closure ruling. He argued that the court did not have sufficient information about the pending issue to properly balance the *Bone-Club*[1] factors before closing the courtroom. He advised the court that the new client was the judge's daughter and argued that any embarrassment to the judge or his daughter was an insufficient basis to close the courtroom.

The court denied reconsideration, reasoning that the defense had requested the closure and would be unable to show any prejudice from the closure decision. The court then turned to Mr. Hagopian. Defense counsel advised that his office had just undertaken to represent the judge's daughter, the matter was unrelated to the current criminal case, and that he could decline the daughter's case if the court thought he should. Counsel also

---

[1] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

wanted to make sure the court knew about the matter in case the judge thought the appearance of fairness required the court to recuse. Judge Sperline indicated he was unaware of the action, but did not believe counsel's representation of his adult daughter in an unrelated case in another county created any conflict issues. In the event that counsel felt otherwise, counsel was free to withdraw from one of the cases. The court concluded the hearing with the direction that the transcript of the proceedings would be sealed until a future order of the court. The prosecutors did not speak.

Six days later, the court notified the parties by confidential letter that it had reversed itself. Judge Sperline criticized counsel for not proceeding in writing by use of a sealed declaration. The judge issued an order sealing the record of the closed proceedings. He also filed an order of recusal that disqualified him from any further proceedings in the case.

The prosecution filed a notice of discretionary review and obtained an order permitting transcription of the record. A commissioner of this court denied review, but a panel modified that ruling, granted review, appointed trial counsel to represent Mr. Rocha, and directed the parties to file a brief on the application of the experience and logic test of *State v. Sublett*, 176 Wn.2d 58, 292 P.3d 715 (2012), to a motion to recuse. The matter was then considered by a panel without argument.

4

ANALYSIS

This case presents the issue of whether the hearing was required to be conducted

in public. Because no action was sought nor was there argument on a motion, the State's

assertion of a right to open proceedings under Art. I, § 10 did not attach.[2]

The Washington constitution requires that all court proceedings be open, Art. I §

10,[3] and further guarantees public trials to criminal defendants, Art. I, § 22.[4] Courts may

only close proceedings after a proper balancing of competing interests. *State v. Bone-*

*Club*, 128 Wn.2d 254, 258-259, 906 P.2d 325 (1995). The *Bone-Club* balancing test is

applicable to both constitutional provisions. *Id.* at 259. The threshold question of

whether a particular matter is required to be heard in open court is determined by using

the experience and logic test set out in *Sublett*.

That test requires courts to consider both history (experience) and the purposes of

the open trial provision (logic) to determine if the open courtroom provisions apply.

*Sublett*, 176 Wn.2d at 73. The experience prong asks whether the practice in question

---

[2] Mr. Rocha does not assert his Art. I, § 22 right to a public hearing and has waived any claim under that provision. His counsel's request to close the hearing and participation thereafter also, as Judge Sperline recognized, took the hearing outside of the protections of the structural error doctrine. *State v. Momah*, 167 Wn.2d 140, 155-156, 217 P.3d 321 (2009).

[3] "Justice in all cases shall be administered openly, and without unnecessary delay."

[4] "In criminal prosecutions, the accused shall have the right . . . to have a speedy public trial by an impartial jury. . . ."

5

historically has been open to the public, while the logic prong asks whether public access is significant to the functioning of the right. *Id.* If both prongs are answered affirmatively, then the *Bone-Club* test must be applied before closing the courtroom. *Id.*

Respondent argues that this was a ministerial matter that did not need to be considered in the courtroom. Petitioner argues that there is no Washington authority suggesting that a recusal motion can be heard outside of the public courtroom and, hence, the history prong supports finding that the matter should be heard in public. It relies heavily on a Sixth Circuit opinion, *Applications of National Broadcasting Co.*, 828 F.2d 340 (6th Cir. 1987) (NBC).

Although out-of-state authority is seldom informative on the meaning of a provision in the Washington constitution, *NBC* is factually similar to this case and the court conducted the same analysis required by Washington. In *NBC*, the court surveyed Sixth Circuit cases involving judicial disqualification in the previous 60 years and failed to find any cases where the proceedings were closed or the record sealed. *Id.* at 344.

A Washington case law review likewise confirms that the issue of judicial recusal frequently arises in the trial courts and makes its way to the appellate courts. *E.g., State v. Thompson*, 169 Wn. App. 436, 453-54, 290 P.3d 996 (2012), *review denied*, 176 Wn.2d 1023 (2013); *State v. Chamberlin*, 161 Wn.2d 30, 36-37, 162 P.3d 389 (2007); *State v. Leon*, 133 Wn. App. 810, 812, 138 P.3d 159 (2006); *Smith v. Behr Process Corp.*,

6

113 Wn. App. 306, 340, 54 P.3d 665 (2002); *In re Parentage of J.H.*, 112 Wn. App. 486, 496, 49 P.3d 154 (2002); *West v. Osborne*, 108 Wn. App. 764, 768-69, 34 P.3d 816 (2001); *Wolfkill Feed and Fertilizer Corp. v. Martin*, 103 Wn. App. 836, 839, 14 P.3d 877 (2000); *State v. Graham*, 91 Wn. App. 663, 665, 960 P.2d 457 (1998); *In re Estate of Barovic*, 88 Wn. App. 823, 825, 946 P.2d 1202 (1997); *In re Marriage of Farr*, 87 Wn. App. 177, 183, 940 P.2d 679 (1997); *Sherman v. State*, 128 Wn.2d 164, 181-82, 905 P.2d 355 (1995); *In re Marriage of Duffy*, 78 Wn. App. 579, 581, 897 P.2d 1279 (1995); *State v. Mail*, 65 Wn. App. 295, 297, 828 P.2d 70 (1992); *State v. Eastabrook*, 58 Wn. App. 805, 817, 795 P.2d 151 (1990); *State v. Palmer*, 5 Wn. App. 405, 411, 487 P.2d 627 (1971); *Hair v. Old Nat. Ins. Agency*, 184 Wash. 477, 51 P.2d 398 (1935); *State v. Superior Court for Lewis County*, 131 Wash. 448, 230 P. 154 (1924); *State v. Holden*, 96 Wash. 35, 36, 164 P. 595 (1917); *Cooper v. Cooper*, 83 Wash. 85, 87, 145 P. 66 (1914); *Fortson Shingle Co. v. Skagland*, 77 Wash. 8, 137 P. 304 (1913); *State ex rel. Barnard v. Board of Educ. of City of Seattle*, 19 Wash. 8, 52 P. 317 (1898); *Barnett v. Ashmore*, 5 Wash. 163, 31 P. 466 (1892). Not all of the opinions in these cases address where the court heard the issue, but many of them reflect that the recusal issue was heard in the courtroom.

Although there is no reported case history of recusals being heard in closed courtrooms, every member of this panel is familiar with informal recusal requests

occurring outside of the courtroom. Many recusals also are handled administratively, with clerk's offices having lists of conflicts of interest for judges who have named attorneys or parties whose cases they will not hear. Thus, we cannot conclude that all recusals take place in the courtroom.

Nonetheless, we believe the experience prong confirms that when recusals are *litigated* in Washington, they typically are litigated in open court. Accordingly, this prong favors hearing recusal *motions* in the courtroom.

The logic prong asks whether the purposes of the public trial right are significantly furthered by public access. *Sublett*, 176 Wn.2d at 73 (citation omitted). The purposes of the public trial right are

> to ensure a fair trial, to remind the officers of the court of the importance of their functions, to encourage witnesses to come forward, and to discourage perjury.

*State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005).

Since Washington courts have not yet addressed the question of judicial disqualification under the *Sublett* test, we believe the *NBC* opinion is again helpful. There, addressing the second prong, the court wrote:

> "The first amendment right of access is, in part, founded on the societal interests in public awareness of, and its understanding and confidence in, the judicial system." The background, experience, and associations of the judge are important factors in any trial. When a judge's impartiality is questioned it strengthens the judicial process for the public to be informed of how the issue is approached and decided.

8

*NBC*, 828 F.2d at 344-45 (internal citations omitted). We agree. Appearing to cover up allegations of bias can only hurt public perception of a judge's fairness. A public hearing concerning the judge's ability to impartially decide a case also would tend "to remind the officers of the court of the importance of their function." *Brightman*, 155 Wn.2d at 514.

We conclude that this prong, too, favors public access. We therefore hold that a recusal motion argued to the court is subject to our constitutional commands of open proceedings and may only be closed for compelling circumstances[5] in accordance with the test of *Bone-Club*.

Having also reached that same conclusion on this threshold issue, appellant understandably contends that this case was subject to a public hearing and that the trial court erred in its *Bone-Club* analysis. Although we agree with the latter observation,[6] the State's argument founders on the former.

---

[5] For example, embarrassment to the judge, counsel, or a party would not be a compelling circumstance. *See State v. Loukaitis*, 82 Wn. App. 460, 468, 918 P.2d 535 (1996).

[6] Among other factors, *Bone-Club* requires that the court identify a compelling purpose for closing the courtroom and weigh that reason against the public interest in open proceedings. 128 Wn.2d at 258-259. The record of this case does not reflect that a compelling purpose was identified or that it was balanced against the public interest. In fairness to the trial court, the judge was given little in the way of information or argument to assist the closure determination.

The State's brief states:

> The hearing in question in this case could be termed a motion to recuse, or arguably just informing the judge of a potential conflict between himself and a defense attorney. Either way the weight of authority from other jurisdictions is that the public trial right attaches.

State's Br. at 2.

We do not believe that the hearing can be termed a motion to recuse. Careful review of the transcript shows that Mr. Hagopian did not ask the court to take any action. He did not ask Judge Sperline to disqualify himself from Mr. Rocha's case. He did not ask to have himself removed. The transcript reflects only that counsel conveyed information to the judge in case it was of value for determining the existence of a conflict of interest for Judge Sperline or Mr. Hagopian. There simply was no request that the court do anything. The prosecutor did not even speak after his reconsideration request was denied. We would expect that the prosecutor would want to be heard on the propriety of disqualification or the existence of a conflict of interest if those issues were being debated. There was no motion before the court and we do not believe this hearing can fairly be characterized as a motion to recuse.

Instead, we agree with the State's second observation that this proceeding was informational. We do not, however, agree with its conclusion that the "weight of authority" indicates that the right of public access attached to it. Once again, the *NBC* decision is informative.

10

The *NBC* case expressly limited itself to *contested* disqualification proceedings. *NBC*, 828 F.2d at 345. Instead, it noted that very often judges recuse *sua sponte* and that there was nothing wrong with that practice. *Id.* at 344. The right of public access was not implicated by those decisions. *Id.* at 344-345. Similarly, the personal experiences of this panel's members are that trial judges frequently recuse, *sua sponte*, in all types of civil and criminal litigation.

In order for a judge to recuse, he or she must have information suggesting there is a reason for recusal. Attorneys will often be the source of that information, and that especially is the case when the attorney's activities are the basis for the potential recusal. Thus, we think attorneys should feel free to convey relevant information to the judge when necessary.[7]

However, "not every interaction between the court, counsel, and defendants will implicate the right to a public trial, or constitute a closure if closed to the public." *Sublett*, 176 Wn.2d at 71. We believe that observation is especially compelling in this context. Alerting the judge to a potential problem would appear to be a classic example

---

[7] We presume that both judges and attorneys will live up to their respective obligations to avoid *ex parte* communication. CJC 2.9; RPC 3.5(b).

11

of conveying information and would not typically require a public hearing in the absence of a motion or other request that the judge take action.[8]

We can see practical problems that would ensue if hearings were required merely to convey information. For instance, would a public defender with a heavy caseload have to note a hearing in every one of those cases if a judge's child became a client? Is it necessary to note a hearing to alert a judge that her spouse had at one time worked on a case prior to current counsel taking on the matter? If a judge was expected to become a witness for the prosecutor or the public defender in one case, would that office have to request hearings in every case it was currently handling before the judge? We think the answer in each instance, and in all similar instances, is "no."

The relevant distinction is, in our opinion, between conveying information and requesting action. Accordingly, we conclude that this hearing was not one to which the public access right of the constitution applied because no action was requested of the judge. We also find support for this approach in our decision in *In re Detention of Reyes*, 176 Wn. App. 821, 309 P.3d 745 (2013). There we concluded that it was error for a trial judge to hear argument on a motion to dismiss in a civil case in chambers (via telephone)

---

[8] We are referring here to informal communication. If, for instance, testimony was being taken, the formality of that process suggests a hearing at which the public access right would be implicated.

12

No. 32064-2-III
*State v. Rocha*

without first conducting a *Bone-Club* analysis. *Id.* at 841-842. In the current case, we have the converse situation. Accordingly, the result is not the same – we find no error.

Because the October 15 closed hearing did not have to be conducted in public, the State's right to an open hearing under Art. I, § 10 did not apply. Accordingly, we affirm the trial court, albeit on different grounds.[9]

Affirmed.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Brown, J.

---

[9] The State challenged the sealing of the trial court record on the basis of the *Bone-Club* issue and not on the propriety of that action under GR 15. Accordingly, we do not opine on the outcome of any GR 15 motion. We likewise do not address the State's request to seal records in this court as it was based on the *Bone-Club* argument.

13