[No. 26877.   Department Two.   January 5, 1938.]

JULIUS VERCRUYSSE *et al., Respondents,* v. CASCADE LAUNDRY COMPANY, *Appellant.*[1]

[1]Reported in 74 P. (2d) 920.

*Danson, Lowe & Danson* and *Clare E. Turner,* for appellant.

*Robertson & Smith,* for respondents.

ROBINSON, J. — The plaintiffs, respondents here, brought this action against Cascade Laundry Company to recover damages with respect to injuries suffered by themselves, their automobile, and its contents in a collision with the defendant's delivery truck at the intersection of Apple way and Dearborn street, a few hundred feet east of the city limits of Spokane. The case was tried by jury. At the close of its case, the defendant moved for a nonsuit, later for a directed verdict, and, after the jury had returned a verdict for the plaintiffs in the sum of eleven hundred dollars, moved for judgment notwithstanding the verdict. On appeal, denial of each of these three motions is assigned as error.

On the morning of December 24, 1936, Mr. and Mrs. Vercruysse were driving into Spokane on Apple way, an east and west four-lane, paved, arterial highway, forty-five feet in width. Dearborn street comes into Apple way from the south but does not cross it. The street is not improved by paving or sidewalks. At the point of intersection, it is, in effect, sixty-four feet

wide, for at the west side, where it joins Dearborn, there is a Shell service station, and on the east side a garage. It is sixty-four feet between these buildings. It was snowing heavily at and before the time of the collision.

The plaintiffs wanted to go to the station at the southwest corner of the intersection. This necessitated a left turn across the east-bound traffic lanes of Apple way. While making this turn and crossing the outside east-bound lane, their car was struck on its right side by the laundry truck, which was proceeding east in its appropriate lane.

In their complaint, the plaintiffs alleged that the laundry truck was operated at a high, dangerous and illegal rate of speed, and with its windshield covered with snow and ice to such an extent as to obscure the driver's vision.

The defendant entered a general denial and set up affirmatively a general plea of contributory negligence. It became apparent early in the trial that defendant could very plausibly rely upon two claims in this respect: First, that the plaintiffs were guilty of negligence, because they made their left turn before reaching the center of the intersection; and second, they saw, or must, in law, be taken to have seen, the defendant's truck approaching them from the west before they began to make their left turn, and, instead of giving it the right-of-way, they turned directly into its path. The appeal is prosecuted upon the theory that these two acts of negligence were shown as a matter of law during the presentation of the plaintiff's case, and had in no way been disproved at the close of all the evidence.

The assignments made have necessarily required us to minutely examine the evidence. It clearly shows that the defendant was guilty of negligence. There is

also a great deal of evidence, perhaps a preponderance, tending to prove that the plaintiffs were guilty of contributory negligence, but in our inquiry the question of preponderance is not material.

Plaintiffs having received a verdict, we must, in passing upon the question before us, not only regard all competent evidence in the record which is favorable to the plaintiffs as true, but must also give them the benefit of every favorable inference which may reasonably be drawn from such evidence. If, when so considered, the record reveals sufficient competent evidence to support the verdict, the judgment must be affirmed.

At what point did the plaintiffs make the left turn? Appellant contends that it is shown by the plaintiffs' own evidence that they made the turn at the east line of Dearborn street, and strongly stresses the following testimony quoted from its cross-examination of Mr. Vercruysse:

"Q. You mean just as you got at Dearborn street? A. Yes. Q. That would be the east side of Dearborn street? A. Yes, sir. Q. You came pretty near to a stop there? A. Yes. Q. Slowed down? A. Yes. Q. And looked ahead, did you? A. Ahead and opposite and back. Q. And the snow was pretty thick for you to see anything? A. Yes. Q. Then you turned over toward the service station from there? A. Yes. Q. At an angle? A. Yes. Q. In other words, you didn't drive down to the middle of the intersection, of course, to make the turn? A. I drove the way a decent driver is supposed to do."

The last answer quoted is clearly not to be taken as evidence that Mr. Vercruysse started his turn in the center of the intersection. On the other hand, we do not think that the answer to the question about the middle of the evidence quoted, "Then you turned over toward the service station from *there?*" must neces-

sarily be taken as a flat admission that he started his turn at the east side of the street. One has to go back quite a little ways to definitely determine what "there" refers to. The question was put after the attention of the witness had been diverted to a wholly different matter.

On redirect examination, the witness was asked to step down to the map, which was being used, and indicate the point in the intersection to which he came before starting to turn. This was objected to as improper redirect, and the objection sustained. An argument ensued as to whether or not the witness had testified upon direct examination that he went up to the center of the street. The witness said he did. Defendant's counsel said that he had not. The matter proceeded as follows:

"MR. SMITH: All right. Take the stand. I want to ask you some more questions. (Q) Now, Mr. Vercruysse, where was it, as you came up to Dearborn street, where was it that you partly brought your car to a stop? A. Right in the center of the highway on the center line from Dearborn street, on the intersection there; pretty close to that. Q. Then, as I understand you, you came up to the center of Dearborn street and then turned to the left or south, is that right? A. Yes. MR. LOWE: I object to that as improper redirect examination. THE COURT: Sustain the objection. MR. SMITH: Mr. Vercruysse, Mr. Lowe asked you where you stopped, if you turned from the east side of Dearborn street. Did you understand that question, or did you not? MR. LOWE: I didn't ask him exactly that question—if he turned from where he stopped, describe the place where he stopped. A. You want to know what? I was coming pretty near to a stop before turning? MR. SMITH: Yes. A. It was in the center line right on the intersection with Dearborn station, with Dearborn street. MR. SMITH: That is all."

His only reference to this point on direct examination was not entirely clear and required clarification.

"Before you switch off you have to look what you were doing. I drove slowly to the center of the street. When I was there I pretty near came to a stop. No cars was in sight. *I switched off on the southwest side of Dearborn.*"

It is not clear that the witness used the words "I drove slowly to the center of the street" with reference to Dearborn street. Context, not quoted, would seem to indicate that he meant Apple way, that is, that he was referring to his movement over to the south west-bound lane.

Mrs. Vercruysse, who testified before her husband was called, was not questioned on this point, but, in giving her testimony, twice stated that they made their turn "right in the intersection," whatever that may mean. We think that the court, in denying the motion for a nonsuit, correctly ruled on the matter.

"As I said before, the evidence is for the jury as to just where Mr. Vercruysse did turn. I understood him to testify at one time that he went beyond the center and another time when you cross examined, that he turned at the east side of the road, and it would be for the jury."

The trial judge not only plainly instructed the members of the jury that, if Mr. Vercruysse turned to the left before reaching the center of the intersection, this would constitute negligence on his part, but also, and upon his own initiative, directed their particular attention to the question of fact involved by submitting the following written interrogatory:

"In addition to the general verdict, please answer whether Mr. Vercruysse in approaching the intersection of Apple way and Dearborn street with the intention of turning to the left, proceeded to a point beyond

the center of the intersection before turning. You will answer yes or no."

The jury answered "yes." That answer cannot be disregarded, since there is competent evidence in the record to sustain it.

The jury was also carefully instructed that the defendant's truck had the right-of-way across the intersection and that it was the duty of Mr. Vercruysse to exercise reasonable care to keep a lookout for vehicles approaching from the west, including the truck of the defendant.

The appellant's second contention is that it appears, as a matter of law, that Mr. Vercruysse did not perform that duty. Both he and his wife testified that they both looked ahead very carefully before making the turn and saw no car approaching from the west. Appellant says, however, that the physical facts show that the truck was so close that the plaintiffs could not be heard to deny that they saw it, and that their denials cannot be considered as evidence, under the well-established and familiar rule which has been applied in such cases as *Silverstein v. Adams,* 134 Wash. 430, 235 Pac. 784; *Strouse v. Smith,* 166 Wash. 643, 8 P. (2d) 411; *Stokoe v. Paulson,* 168 Wash. 1, 10 P. (2d) 247; *Fisher v. Hemrich Brewing Co.,* 183 Wash. 489, 49 P. (2d) 1, 53 P. (2d) 1198; *Proper v. Brenner,* 191 Wash. 540, 71 P. (2d) 389; and many others.

In appellant's brief, in an attempt to show that the plaintiffs saw, or, as a matter of law, must be deemed to have seen, the defendant's truck before attempting the left-hand turn, it is said:

"The map—Exhibit 7—shows an unusually wide smooth highway. As a matter of fact it is forty-five feet in width and the south half of the highway is twenty-two and one-half feet wide. If Vercruysse was travelling at twelve miles per hour his car was moving 17-2/5th feet per second and if Reed was travelling

thirty miles per hour, which was more than any testimony indicated, his car was travelling forty-four feet per second.

"Manifestly, whether Mr. Vercruysse proceeded past the middle of the intersection or not, it took him a little more than one second to cross from the middle line of the Appleway over onto the south lane of eastbound traffic and at the time he was doing this the other automobile was within forty-four feet of him."

This computation establishes nothing, as a matter of law, because its result depends upon factors of time, speed and distance which are themselves not so established. For example, it may be pointed out that, while the plumb line distance from the center of the intersection to the south edge of the street is 22½ feet, no automobile can turn at a perfect right angle, and the distance traveled must be increased by the necessary curve. Furthermore, although the testimony is that Vercruysse was turning out of the southerly westbound lane, there is no evidence that he was at the exact southerly edge of it, and he may have been, and probably was, several feet to the north of the center of the street, and there is testimony that, when the collision occurred, his front wheels were off the south edge of the pavement, so it may well be that a second and a half or a second and three-quarters, or even more, elapsed between the beginning of the turn and the collision.

It is also said in the computation made by the appellant, "if Reed [the driver of the truck] was traveling thirty miles an hour, which was more than any testimony indicated, . . ."

This is not strictly in accordance with the record. Reed, in his police report, said he was not going to exceed thirty miles per hour, and he testified several times at the trial that he was traveling thirty miles per hour. But the members of the jury were not com-

pelled to accept that testimony, not only because Reed was an interested witness, but, in finding his speed, they were entitled to take into consideration how far he pushed the plaintiffs' car sidewise, *Day v. Polley*, 147 Wash. 419, 266 Pac. 169, which was admitted to be ten or twelve feet and claimed to be as much as thirty.

They were also entitled, in estimating his speed, to consider the damage he did to plaintiffs' car, and that he struck the car with such force as to break every one of the 720 eggs contained in the two cases which the plaintiffs were taking to Spokane, and they could also take into consideration that he did not swerve from an absolutely straight course, he testifying that, on account of his speed and the weather conditions, he could not effectively do so. If the jury could reasonably have found that he was going forty miles an hour, then he was traveling 58.6 feet per second; if forty-five miles an hour, 66 feet per second; and, if fifty miles, 73.3 feet per second.

Neither the appellant's computation nor our own suggested computations establish anything, as a matter of law, but the fact that computations can reasonably be made to arrive at widely different results plainly shows that the distance the laundry truck was up the street when the plaintiffs began their turn was a question for the jury.

All the witnesses agree that it was snowing hard, and Mr. Vercruysse, the driver of the plaintiffs' car, testified that his left-hand window was down; that he leaned out, and looked up the road, and that he could not see ahead more than seventy-five or one hundred feet. Mrs. Vercruysse said, seventy-five feet or one hundred feet, "maybe more."

The rule of law which appellant contends is applicable is stated in *Silverstein v. Adams*, 134 Wash. 430, 235 Pac. 784, as follows:

"A number of times this court has held that, when a person testifies that he looked and did not see an object, *which plainly he could have seen,* that he will not be heard to say that he looked and did not see. In other words, the situation is the same as though he had looked and seen the object." (Italics ours.)

In this case, it is not plain that "he could have seen." There was evidence from which the jury could find that, when the respondents made their left turn, the appellant's truck was beyond the range of visibility. It was for that reason, as the record shows, that the trial judge, in ruling upon the motion for nonsuit, held the cases cited by the appellant inapplicable, and, presumably, he remained of the same opinion when he refused to grant the appellant's motions for a directed verdict and for judgment notwithstanding the verdict.

Being of the opinion that contributory negligence on the part of respondents was not shown, as a matter of law, the judgment appealed from is affirmed.

STEINERT, C. J., BEALS, MILLARD, and BLAKE, JJ., concur.