[No. 36410.   Department One.   February 27, 1964.]

WALTER J. KURTZ et al., Appellants, v. HAROLD R. FELS et al., Respondents.*

*Frederick B. Cohen,* for appellants.

*Bryan & Bryan,* for respondents.

*Reported in 389 P. (2d) 659.

HALE, J.—A collision between a bus and a passenger car on an arterial highway in Kitsap County gives rise to two questions in this appeal: (1) Should a new trial, on the basis of newly discovered evidence, have been granted? (2) If the new trial is allowed, what are the issues to be resubmitted to the jury?

JoAnn Kurtz, the plaintiff, on January 12, 1960, at about 4 o'clock in the afternoon, while driving her car in a northerly direction on State Highway 14, a limited access arterial, ran into a school bus that crossed the highway in front of her. The bus, owned by respondent school district, had been going east on the Old Clifton Road, empty of passengers, when Harold R. Fels, its driver, sought to drive it across the arterial highway to continue it on its easterly journey. Following a $14,298.35 verdict for the plaintiff, the granting of respondents' motion for a new trial on the showing of newly discovered evidence, gives us the first question to be decided on plaintiffs' appeal.

In her complaint, filed January 16, 1961, plaintiff JoAnn Kurtz said that the accident had caused her at times to become faint and lightheaded and induced in her spells of unconsciousness. By a trial amendment of March 29, 1961, she amplified this allegation, stating that she had suffered an injury to the cortex of the brain resulting in epileptic seizures. In her deposition of February 21, 1961, taken in discovery by respondents, she testified that never in her life before the accident had she ever fainted. She affirmed this at the trial in her testimony:

"Q. Did you ever have any of these fainting spells before the accident? A. No. Q. Anything like it at all? A. Nothing."

Again, at the trial, after Mrs. Kurtz had described at length her spells of dizziness and loss of balance while she was in a department store elevator, culminating probably in unconsciousness, she testified:

"Q. You say this has happened to you many times at home. A. Many, many times. Q. And you never had anything like this before? A. Never before this accident."

After verdict, defendants moved for a new trial on the grounds of newly discovered, material evidence which could not with reasonable diligence have been discovered and produced at trial. Supporting this motion, defendants filed seven separate affidavits, all to the effect that plaintiff JoAnn Kurtz had been subject to fainting spells for a period of many years preceding the accident. One affiant swore to seeing her faint four times in a 2-year period. Another deponent described fainting spells on four separate occasions: at a dance, during a party, while on a camping trip, and at home. Others stated in their affidavits that they had observed her in spells of unconsciousness on various occasions going back as far as 1947. Her former husband, in his affidavit, said that she had, during his marriage to her, undergone surgery in an attempt to eliminate the fainting spells—and that the surgery had reduced their frequency to a point where, during the last few years of their marriage, she had fainted about once a week.

Plaintiffs urge that the claimed newly discovered evidence tending to show prior fainting spells had at all times been available to respondents and that reasonable diligence before trial would have led to its discovery. They point to an amended answer to interrogatories made as late as March 24, 1961, in which the secretary to respondent South Kitsap School District No. 402 had stated under oath that the pre-existing fainting condition had caused the accident. This answer, say plaintiffs, shows possession of knowledge sufficiently in advance of the trial, which commenced April 4, 1961, to have enabled defendants to present this evidence at trial. To rule otherwise, say plaintiffs, permits the defendants to gamble on the verdict and then obtain a new trial on evidence either known to them or charged to their knowledge had they shown reasonable diligence in procuring it.

Defendants, we think, satisfactorily explain their amended answer to the interrogatories. They say their reference to plaintiff driver's pre-existing fainting spells alluded to a fainting condition as she was engaged in operating her automobile, fainting spells derived from a highly emotional

condition; defendants say their answer came from pretrial medical reports describing plaintiff JoAnn Kurtz as being psychogenic, emotional and of a labile personality. Plaintiffs have not shown that defendants possessed any other knowledge or notice that Mrs. Kurtz had a pre-existing condition that induced fainting spells or other periods of unconsciousness or were possessed of evidence of facts set forth in the affidavits. Hence, the amended answers to the interrogatories made before trial do not, we think, show such knowledge as to affect the motion for a new trial.

■ Our statement in *Libbee v. Handy*, 163 Wash. 410, 1 P. (2d) 312, declares the standards by which a new trial will be granted for newly discovered evidence. To warrant the granting of a new trial on the ground of newly discovered evidence, it must appear (1) such evidence will probably change the result of the trial; (2) the new evidence has been discovered since the trial; (3) it could not have been discovered before trial by the exercise of due diligence; (4) it is material, competent and otherwise admissible; and (5) it is not merely cumulative or impeaching.

If defendants can produce competent evidence that JoAnn Kurtz had been subject to fainting spells during a relevant period before the accident, and had consulted doctors about this asserted disability, it would appear to be evidence that is not merely cumulative or impeaching, but rather material evidence going to an important issue in the case, *i.e.*, the nature and extent of the injuries proximately resulting from the accident.

This leaves for discussion on this particular point the question of diligence. Plaintiffs say that a reasonably diligent investigation of the facts before trial would inevitably have led to the discovery of the same evidence before trial that the parties now proffer after trial. Perhaps this is so, but the matter of diligence in investigating yielded to the categorical statements, made under oath, on a subject well within a party's knowledge which could, we think, forestall further investigation of the point involved. The learned trial judge aptly conveyed this idea in his memorandum decision when he said:

" . . . Counsel had a right to rely on her testimony when she stated under oath in her deposition that she had never suffered fainting spells previously. She either had or hadn't, and counsel had no reason to question this portion of her testimony in the absence of other evidence. . . . "

■ We take the rule to be that, where a party to an action, in clear and unambiguous terms under oath, asserts the existence or nonexistence of a fact whereof such party has knowledge, or in the ordinary course of affairs would be expected to have knowledge, the adverse party may rely on such statements and, in the exercise of reasonable diligence, is not required to look behind the statements. The trial court properly granted a new trial for newly discovered evidence.

■ But, should the new trial involve all of the issues raised by the pleadings and pretrial procedures? The issue of defendants' negligence has been finally resolved as a matter of law, we think, by the evidence. That Fels negligently drove the bus across the limited access, arterial highway in front of plaintiffs' oncoming car, and thus failed to yield the right of way to JoAnn Kurtz is clearly established under whatever legal theory may be advanced by either party. RCW 46.60.170. Defendants' negligence has been established and ought not be retried. The more difficult question, though, is whether there was evidence of contributory negligence to submit to the jury. To answer this question, we must consider further the details of the accident.

Harold R. Fels, defendant bus driver, testified that he drove his bus to the white stop line and stopped before crossing the highway. He knew the speed limit on the highway to be 60 miles per hour at that place. His bus, a new International conventional, had both a corner post and rear-vision mirror which obstructed his view and created a blind spot as he looked to his right. He waited at the stop line to allow a car from his left on the highway going south to pass; observing nothing coming from his right, Fels put the bus in second gear and, moving easterly, drove across. Had there been no blind spot, he said he could have

seen everything on the highway for some 900 feet; as it was, a part of that distance was obscured. He said that he had driven the 30-foot bus nearly across the highway to a point where only about 3 feet of it still remained in plaintiffs' northbound lane when his bus was struck at its right rear wheel by the left front of plaintiffs' car. Respondents say that the bus had a maximum speed of 10 miles per hour in second gear and, allowing for acceleration by taking an average of 7½ miles per hour, figure that it took 6 seconds for the bus to move from the stop line to the point of impact.

JoAnn Kurtz said that, as she drove north toward Bremerton at about 45 miles per hour nearing the Old Clifton Road intersection, a car passed her going south, and just after it had passed going south she saw the school bus approaching the highway at about where the stop line is located, just a little behind the stop sign. The bus came right on through without stopping, according to Mrs. Kurtz, in front of her car. She applied the brakes hard, felt her wheels skid and was knocked unconscious as her car rammed the right rear of the bus. She guessed at first that she was about 60 feet from the intersection when she first saw the bus, but changed this estimate to a greater distance in other testimony.

State Trooper Don I. Oswalt fixed the point of impact about 8 feet to the right of the center line in the northbound lane, and measured the skidmarks from plaintiffs' car as being 18 paces in length on one side and 10 paces on the other as the car swung sideways. No inference of negligence could be drawn from the length and shape of the skidmarks.

Respondents seek to arrive at an inference of contributory negligence by computations based on their theory applied to their own evidence. They take the testimony of witness Brown, who testified that, while going south on the highway, he passed the bus at the intersection, saw the oncoming vehicle of appellants, knew that there would be a collision, and made a U-turn. He estimated his speed at 15 to 20 miles per hour and, on the basis of the time and place where he made the U-turn, fixed his distance from the accident at 150 feet. Actual measurement showed this distance on the

map to be 349 feet. Thus, respondents reason that Mrs. Kurtz necessarily had to travel a minimum of 349 feet to the point of collision from the time the bus left the stop line. Then they enlarge this distance of 349 feet to 600 feet by showing that, if it took the bus 6 seconds to traverse the distance from the stop line to the point of impact at a constantly accelerating speed of 7½ miles per hour, on the basis of her testimony Mrs. Kurtz must have traveled at least 600 feet while the bus was traveling 66 feet; for, they say, at 45 miles per hour she is traveling 65 feet per second which is 390 feet in 6 seconds, and, if one allows for reaction and braking time, she was approximately 600 feet from the point of impact when the bus started to cross the highway. They say this gives to the jury evidence from which contributory negligence may be inferred; that is to say, negligence in failing to keep a proper lookout or failing to give proper attention to the road ahead or negligence in failing to take remedial action by avoiding the bus or in coming to a stop.

■ We view these conclusions as speculation. They are based on no physical facts from which the inference of contributory negligence may be drawn. We find no evidence in the case from which Mrs. Kurtz' inattention, excessive speed, use of faulty equipment, or failure to exercise reasonable care may be derived, other than the impact with the bus. By changing the variables slightly upon which respondents make their computations, that is, decreasing or increasing the speed of the bus, we show that either the automobile would have passed the intersection unscathed or the bus would have completed its crossing of the highway without incident. *Harmon v. Merrick,* 62 Wn. (2d) 171, 381 P. (2d) 614; *Greene v. Rothschild,* 60 Wn. (2d) 508, 374 P. (2d) 566; *Scobba v. Seattle,* 31 Wn. (2d) 685, 198 P. (2d) 805; *Vercruysse v. Cascade Laundry Co.,* 193 Wash. 184, 74 P. (2d) 920.

Contributory negligence, as is the case with any other affirmative defense, must be proved by a preponderance of the evidence. *Liesey v. Wheeler,* 60 Wn. (2d) 209, 373 P. (2d) 130. And proof beyond the point of a mere scintilla

means proof of facts—facts to be assessed by senses—something seen, said, done, measured, written or felt, in the tactile sense.

Accordingly, we conclude that there is no evidence or inference from any fact proven upon trial that would sustain a finding by the jury that appellant JoAnn Kurtz either exceeded the speed limit, failed to keep a proper lookout, or did not have her car under control. *Young v. Kuehnoel,* 50 Wn. (2d) 67, 309 P. (2d) 377.

The judgment is affirmed except that the new trial shall be limited to the issue of damages.

So ordered.

OTT, C. J., ROSELLINI, and HUNTER, JJ., concur.

HILL, J. (dissenting in part)—I concur in the granting of a new trial on the ground of newly discovered evidence. I concur in the holding that the negligence of the defendants is established as a matter of law.

I dissent from the holding that the absence of contributory negligence is so established. I would limit the new trial to the issues of contributory negligence and damages.