[No. 39404. Department Two. September 12, 1968.]

THE STATE OF WASHINGTON, *Respondent*, v. DANNY T. FRANKS, *Appellant.**

*Parr, Baker, Alexander & Cordes*, by *Gerry L. Alexander*, for appellant (appointed counsel for appeal).

*Harold R. Koch*, for respondent.

*Reported in 445 P.2d 200.

NEILL, J.—Defendant appeals from conviction and sentence under RCW 9.54.020 for the unlawful taking of an automobile without the owner's permission.

The events leading up to the charge under which the defendant was convicted started at a somewhat belated bachelor party for him in mid-day of his wedding day, at which he freely imbibed alcoholic beverages. He continued this alcoholic intake right up to the door of the church and the late afternoon wedding. Following the ceremony, the wedding party retired to the recreation room of a nearby apartment complex in the city of Lacey. During the reception, defendant continued to imbibe rather freely, became physically ill, and was quite obnoxious. Friends attempted to calm him, and during this time his shirt and undershirt were removed. At approximately 9 p.m., defendant ran from the wedding reception and disappeared. He was next seen by a police officer sprawled on the front seat of an automobile belonging to one Theodore Elhardt. He was unconscious and alone. The Elhardt automobile had collided with a stack of lumber in a lumber yard adjacent to a street in the neighboring city of Olympia.

The defendant was the owner of a white 1960 Corvair Monza with red upholstery, a dashboard shift lever, and bucket seats. Friends of the defendant had driven his automobile from the church to the place of the reception, parked it in front of the apartment house and so informed defendant.

Shortly before 9 p.m. of this day, Mr. Elhardt had driven his 1962 white Pontiac Tempest automobile, which also had a dashboard shift lever and red upholstery, but with a bench style front seat, to the driveway of the house of a neighbor which abutted the apartment premises on a side street. Mr. Elhardt left the lights on, the motor running and the front door open while he stepped in to see the neighbor. While the neighbor and Mr. Elhardt were talking, the neighbor observed a shirtless man get into the Elhardt car and drive it away. Mr. Elhardt immediately reported the stolen automobile to the police.

The testimony is in conflict as to the extent of intoxication of the defendant. The defendant testified that he had absolutely no recollection as to events from the time he left the wedding reception until he was released from the hospital the following morning. Several guests at the wedding reception testified as to his behavior and to the extent of alcoholic intake during the afternoon and evening and there was testimony that he was "staggering", "uncontrollable", and belligerent. Conversely, testimony of officers at the scene of the accident was that the defendant was coherent and rational, even though he was under the influence of alcohol.

Defendant assigns error to alleged misconduct of the prosecuting attorney during summation. While the defendant was being cross examined, he was asked whether or not he had been convicted of violation of the Dyer Act, to which he responded, "That is a fact." He was then asked, "Which is the transportation of a motor vehicle between states?" To which he responded, "That is." During closing argument, the prosecutor stated to the jury, "I would only want to point out one other thing to you: He took a car. You are not talking to an innocent babe in the woods. He admitted to you on the witness stand he had stolen a car in 1961."

It is clear that defendant did not admit to having stolen a car in 1961. The admission by the defendant of a prior conviction related to a conviction under the Dyer Act[1] which the prosecutor described by his question as "the transportation of a motor vehicle between states."

Intent was a vital issue because there could have been no conviction if the jury found either that he could not have formed the requisite intent under the statute or that he

---

[1] From the record it appears that defendant's admission of a conviction for violation of the Dyer Act refers to 18 USCA § 2312, 62 Stat. 806 (1948), which provides:

Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

believed that the car was his own. Hence, defendant contends that the prosecutor's erroneous statement that defendant had stolen a car in the past could have induced the jury to conclude that the Dyer Act was a car theft statute, which conclusion presumably could be a factor in establishing the requisite intent. Defendant relies on *State v. Rose,* 62 Wn.2d 309, 382 P.2d 513 (1963), *State v. Reeder,* 46 Wn.2d 888, 285 P.2d 884 (1955), and *State v. Navone,* 186 Wash. 532, 58 P.2d 1208 (1936), for the proposition that counsel in his closing statements and argument to the jury cannot make prejudicial remarks not sustained by the record.

There was no objection interposed to the prosecutor's statements and the issue was first raised on motion for new trial. Defendant contends that a new trial nevertheless should be granted since the harm done could not have been cured by an appropriate corrective jury instruction or admonition, citing *Reeder* and *Navone, supra.*

We recently had occasion in *State v. Beard, ante* p. 335, 444 P.2d 651 (1968), to consider the rules applicable to this issue. We there reaffirmed the general rule that objection and motions must be timely made at trial in order to preserve alleged misconduct of counsel as reversible error. There is an exception to this general rule. The failure to make timely objections will be overlooked when the prejudicial effects of the alleged misconduct could not have been cured by an appropriate instruction. We do not believe that the case at bar comes within this exception to the general rule.

Defendant's violation of the Dyer Act is technically different from having stolen a car as alleged by the prosecutor in his closing argument. Nevertheless it is apparent, considering all the circumstances of this case, that the final results of this trial were in no way affected by the reference to defendant's past conviction as car theft rather than as knowingly transporting a stolen car in interstate commerce. A timely and appropriate jury instruction or admonition could have cleared up any possible misunderstanding

the jury might have had concerning the exact nature of defendant's prior conviction.

Defendant contends there was insufficient evidence to sustain a conviction. He argues that the evidence relative to his intoxicated condition establishes that he was incapable of forming the intent to take another's automobile; that no evidence was presented relative to his actions after leaving the reception until the time of the accident and, consequently, this portion of the night's events was left largely to the imagination and conjecture of the jury.

The taking of an automobile without the permission of the owner is different from larceny in that RCW 9.54.020 does not require proof of a specific intent to permanently deprive anyone of anything. *State v. Saylors,* 70 Wn.2d 7, 422 P.2d 477 (1966); *In re Arquette v. Schneckloth,* 56 Wn.2d 178, 351 P.2d 921 (1960); *State v. Daniels,* 119 Wash. 557, 205 Pac. 1054 (1922).

The mere showing of an intentional taking without permission of the owner, regardless of the length of time, is sufficient to prove a violation of the statute. The jury heard conflicting testimony as to the degree of defendant's intoxication and apparently chose to give more credence to that presented by the state. As we indicated earlier, the testimony of the three police officers investigating the accident was to the effect that immediately after the accident the defendant, while obviously intoxicated, was still rational and aware of what he was doing. Also, on cross-examination, defendant testified as follows:

Q. There is quite a difference between a Tempest, which is a Pontiac, and a Corvair, which is a Chevrolet, isn't there? A. I imagine anybody should be able to tell the difference. I mean, there's some people that can't, I mean —. Q. You could tell the difference? A. I sure could, yes. Q. You could tell the difference if you were blindfolded, couldn't you? A. Yes, I could. Q. Especially if your car has bucket seats and the other one has a straight seat? A. That is right.

We have repeatedly held that the jury is the sole and exclusive judge of the evidence and the weight and

credibility of the witnesses and that this court will not reverse if there is substantial evidence to support the jury's findings. *State v. Zorich,* 72 Wn.2d 31, 431 P.2d 584 (1967); *State v. Johnson,* 71 Wn.2d 239, 427 P.2d 705 (1967); *State v. Mickens,* 61 Wn.2d 83, 377 P.2d 240 (1962). There is sufficient evidence to support the jury's finding that defendant had the requisite intent.

Defendant next assigns error to the denial of his motion for a new trial. The motion was on grounds of newly discovered evidence. He set forth an affidavit of a witness who would testify that he observed the subject automobile being driven in a manner indicating that the "driver had absolutely no control over the automobile."

We have repeatedly held that such a motion is addressed to the sound discretion of the trial court and that its determination will not be disturbed on appeal unless it be for abuse of discretion. *Brown v. General Motors Corp.,* 67 Wn.2d 278, 407 P.2d 461 (1965). It is also well established that to warrant a new trial on the ground of newly discovered evidence, the moving party must show that the evidence will probably change the result of the trial, that it has been discovered since trial, could not have been discovered before trial by the exercise of due dilligence, that it is material, and that it is not merely cumulative or impeaching. *Kurtz v. Fels,* 63 Wn.2d 871, 389 P.2d 659 (1964). The most that can be said for defendant's newly discovered evidence is that it would tend to show that defendant was intoxicated during the time he was driving the automobile. It is merely cumulative evidence and the trial court did not abuse its discretion in denying the motion.

Finally, defendant contends that the trial court committed reversible error in refusing to give a proposed instruction which essentially embodied the language of RCW 9.54.120:

> In any prosecution for larceny it shall be a sufficient defense that the property was appropriated openly and avowedly under a claim of title preferred in good faith, even though the claim be untenable.

Defendant contends that his defense included the idea that his presence in Mr. Elhardt's automobile could have resulted from his mistaken belief that the car was his own and that this mistake was the result of his intoxication.

■ Defendant is not charged with larceny (*State v. Nelson*, 63 Wn.2d 188, 386 P.2d 142 (1963)). We need not decide whether RCW 9.54.120 is applicable to the statutory crime of "joyriding" now before us as there is no evidence in the record upon which the proposed instruction could be based. See *State v. Woods*, 163 Wash. 224, 1 P.2d 219 (1931); *State v. Rio*, 38 Wn.2d 446, 230 P.2d 308 (1951); *State v. Hopkins*, 71 Wn.2d 10, 426 P.2d 496 (1967). The only evidence which could possibly support defendant's contention is his testimony that he has no recollection of the taking of the automobile. This falls far short of constituting evidence to support a claim that defendant took Mr. Elhardt's automobile "openly and avowedly under a claim of title preferred in good faith." The jury was given appropriate and adequate instructions on the element of intent and the issue of voluntary intoxication from which defendant could argue his theory of mistaken belief as to whose automobile he took. *State v. Dana*, 73 Wn.2d 533, 439 P.2d 403 (1968).

Judgment affirmed.

FINLEY, C. J., HILL and HAMILTON, JJ., and LANGENBACH, J. Pro Tem., concur.