FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 APR 16 AM 8:52

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | No. 75652-4-I |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RYAN S. GEHR, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 16, 2018 |

DWYER, J. – A jury found Ryan Gehr guilty of child molestation in the first degree. He appeals, contending that the evidence was insufficient to establish sexual contact and that newly discovered evidence warrants a new trial. We conclude that sufficient evidence supports the conviction and that the trial court did not abuse its discretion in denying a new trial. We accept the State's concession that the trial court lacked authority to impose a mental health evaluation as a condition of community custody. Accordingly, we affirm Gehr's conviction, but remand the matter to the trial court solely for the purpose of striking the unauthorized sentencing condition.

I

In March 2016, Courtney Blomeen lived in Blaine, Washington, with her fiancé Gehr and the couple's five-year-old daughter S.G.

On the morning of March 10, Blomeen returned from her nightshift job and prepared to take a shower. As Blomeen was about to enter the shower, S.G. asked, "can I take a shower with you?" Blomeen thought the question was "weird" because S.G. had never asked to do this before.

Blomeen decided to investigate further. At first, S.G. was reluctant to talk. After Blomeen assured S.G. that she was not mad and asked S.G. to just tell the truth, S.G. said that "daddy and her took a shower . . . and that he put soap on his pee-pee and had her wash his pee-pee for him."

Blomeen became extremely upset and ran outside to confront Gehr, who was about to drive to a store. Blomeen "started yelling in the neighborhood for everyone to hear that he was a child molester." Gehr attempted to calm Blomeen down.

Blomeen went back inside the house to ask S.G. some more questions. Blomeen used her cellphone to make a video recording of the conversation.

In the video, S.G. twice demonstrated the contact by rubbing her hand back and forth on Blomeen's hand. S.G. said she had done it "[j]ust for awhile." When asked if Gehr told her to do it, S.G. said, "Well, he didn't really" and that he had first put soap on his "thingy" and then she began rubbing it. S.G. indicated that Gehr had told her to go ahead.

S.G. promised she was telling the truth and said that Gehr had told her, "Don't talk about pee-pee, okay." S.G. looked down and responded "yeah" when

2

Blomeen asked if she thought she was in trouble and that Gehr was going to yell at her.

Gail Tierney, a child forensic interviewer, video recorded an interview with S.G. on March 21, 2016. S.G. said that her father "got in trouble" and was "in timeout for a long time." S.G. missed her father and felt "very, very sad" when the police officers came to her house. S.G. told Tierney that she "washed my dad's pee-pee, right, but I say that by accident." S.G. said her father told her not to tell anyone and then told her to apologize to him because "I forgot not to say I washed my dad's pee-pee, but I did by accident."

S.G. explained she had taken some soap and rubbed "it on my dad's pee-pee." She then washed "my butt first, then I washed dad's butt." When Tierney asked what she meant by "butt," S.G. pointed to the front area between her legs. S.G. described her dad's "butt" as "a red log because it was long . . . shaped like an oval . . . [and felt] like a beetle or something that's long." S.G. said she reached up to get soap from a bottle on the ledge in the shower, put the soap on her hand "and then I rub it together and then I washed my butt first and then dad's pee-pee." S.G. demonstrated by rubbing her hand up and down on her other hand.

S.G. said it was her idea to wash her dad's "pee-pee," but she was embarrassed and "a little scared first and then I did it after." S.G. knew how to do it because "[m]y heart said it was a good idea." S.G. said that when Gehr usually helped her to shower, he would touch "[t]his part and this part," pointing to her

3

crotch and then to her buttocks. When Gehr washed her in this way, it felt "[k]ind of ticklish."

At Tierney's request, S.G. drew a picture of her dad's "pee-pee." S.G. said that Gehr was rubbing his "pee-pee" in the picture and that his "pee-pee" was pink. At one point, S.G. said that her mother was in the bathroom putting on makeup while she was showering with her dad. S.G. said that it was her idea to wash Gehr's "pee-pee" and that Gehr told her she would get in trouble if she told anyone. S.G. confirmed that she had "accidentally told" her mother.

The State charged Ryan Gehr with one count of child molestation in the first degree. At trial, the court admitted Blomeen's cellphone video and the video of S.G.'s interview with Tierney. S.G. also testified.

S.G. testified that she "washed my dad's private" with shampoo. S.G. recalled the shower had occurred sometime after her fifth birthday party. S.G. told her mother about it "[b]ecause I wanted to." During cross-examination, S.G. insisted her mother was not in the bathroom when she was showering, although she remembered telling Tierney that she was.

Blaine Police Officer Jonathan Landis interviewed Gehr shortly after the reported incident. Gehr denied ever taking a shower with S.G. He said that he would put soap in S.G.'s hand and that S.G. would then wash herself.

At trial, Gehr denied that he had ever taken a shower with S.G. or molested her. Gehr also denied that S.G. had ever seen him naked, but

acknowledged that S.G. had described his anatomy "pretty specifically for a five year old."

The jury found Gehr guilty as charged.

Before sentencing, Gehr moved for a new trial under CrR 7.5. In a supporting declaration, Courtney Blomeen stated that after the trial, she again asked S.G. to tell her what happened. In response to a series of questions, S.G. said that she "washed her dad's pee-pee," that it was her idea, that Gehr had told her to stop "right away," and that it did not seem to S.G. that Gehr had wanted her to touch him. Blomeen stated that S.G. repeated the account on the following day. Gehr argued that the new information was material to the issue of whether any contact was incidental or sexual in nature.

The trial court denied the motion for a new trial, concluding that the new information would not likely change the outcome. The court sentenced Gehr to a standard-range indeterminate term of 52 months to life. The court also ordered Gehr to complete a mental health evaluation as a condition of community custody and follow all treatment recommendations.

II

Gehr contends that the evidence was insufficient to support his conviction for child molestation in the first degree. He argues that S.G.'s testimony established only inadvertent touching and that the State therefore failed to prove that he had sexual contact for the purpose of sexual gratification. We disagree.

5

The due process clauses of the federal and state constitutions require that the State prove every element of a crime beyond a reasonable doubt. U.S. CONST. amend. XIV, § 1; WASH. CONST. art. I, § 3. "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). When reviewing a challenge to the sufficiency of the evidence, we determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier could have found the essential elements of the crime beyond a reasonable doubt. Salinas, 119 Wn.2d at 201; see also Jackson v. Virginia, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). We defer to the jury on questions of conflicting testimony, credibility of witnesses, and persuasiveness of the evidence. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

A person is guilty of child molestation in the first degree when the person has "sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083(1). "Sexual contact" is "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire." RCW 9A.44.010(2). Sexual gratification is not an element of child molestation in the first degree, but rather a definitional term that clarifies the meaning of "sexual contact" to exclude "inadvertent touching or contact from being a crime." State v. Lorenz, 152 Wn.2d 22, 34, 93 P.3d 133 (2004). Whether the evidence is sufficient to establish sexual contact necessarily

depends on the specific facts and circumstances of each case. State v. Harstad, 153 Wn. App. 10, 21, 218 P.3d 624 (2009). Circumstantial evidence and direct evidence can be equally reliable. State v. Rodriquez, 187 Wn. App. 922, 930, 352 P.3d 200 (2015).

S.G. repeatedly and consistently demonstrated how she rubbed Gehr's penis up and down while they were naked in the shower together. She described Gehr's penis as a "red log" that was long and oval-shaped and that felt "like a beetle or something that's long." S.G. also drew a picture of Gehr rubbing his "pee-pee." When S.G. first told her mother about the contact, she indicated that Gehr told her to go ahead after his penis had soap on it. S.G. repeatedly said that Gehr told her not to tell anyone immediately after getting out of the shower.

Gehr contends that S.G.'s assertions that the touching was her idea and that "I did it by accident" establish that any contact was inadvertent and fleeting. But after telling Tierney that she washed her dad's "pee-pee . . . by accident," S.G. explained that even though she was embarrassed and did not want to do it, "I did it anyways." Moreover, any minor inconsistencies in S.G.'s testimony involve credibility determinations that this court cannot review on appeal. See Camarillo, 115 Wn.2d at 71.

The evidence of S.G.'s deliberate actions in rubbing Gehr's penis and her apparent regret for having "accidentally" told her mother, coupled with Gehr's direction to go ahead, S.G.'s physical description and drawing of Gehr's penis, Gehr's admonition not to tell anyone, and Gehr's denial that S.G. ever saw him

7

naked or showered with him, was sufficient to support a reasonable inference that the contact was not inadvertent and was for the purpose of sexual gratification. Cf. Harstad, 153 Wn. App. at 23 (defendant's moving his hand back and forth and heavy breathing supported inference of sexual purpose sufficient to satisfy sexual contact element of first degree child molestation). The evidence was sufficient to establish sexual contact and support Gehr's conviction for child molestation in the first degree.[1]

III

Gehr contends that the trial court erred in denying his motion for a new trial. He argues that S.G.'s post-trial disclosure that Gehr told her to stop washing his penis "right away" seriously undermined any inference that the touching was for the purpose of sexual gratification.

To obtain a new trial based upon newly discovered evidence, the defendant must demonstrate that the evidence "(1) will probably change the result of the trial; (2) was discovered after the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching." State v. Macon, 128 Wn.2d 784, 803-04, 911 P.2d 1004 (1996); see also CrR 7.5(a)(3); 7.8(b)(2). The absence of any one of these factors warrants denial of a new trial. Macon, 128 Wn.2d at 804.

---

[1] Gehr's reliance on S.G.'s statement that he told her to stop "right away" is misplaced. That statement was part of Blomeen's postverdict declaration and not admitted at trial. It is therefore irrelevant to our determination that the evidence was sufficient to support Gehr's conviction.

We will not disturb the trial court's denial of a motion for a new trial absent a manifest abuse of discretion. State v. Franks, 74 Wn.2d 413, 418, 445 P.2d 200 (1968).

Gehr claims the new evidence was consistent with S.G.'s earlier statements that the touching was her idea and accidental. But evidence that Gehr told S.G. to stop "right away" was clearly inconsistent with S.G.'s initial disclosure indicating that Gehr told her to "go ahead" before she began washing his penis and with evidence suggesting that Gehr became sexually aroused during the contact. More importantly, however, Gehr fails to demonstrate that the new evidence would have had any effect on the outcome of the trial.

The jury in this case considered not only both of S.G.'s video recorded interviews, but also her trial testimony. In her interview with Tierney, S.G. acknowledged that she missed her father and expressed some regret for having told her mother about the shower after Gehr told her not to tell anyone. Gehr also testified at trial.

Consequently, the jury had a full opportunity to assess S.G.'s accounts of the touching and any inconsistencies in light of Gehr's repeated denial that he showered with S.G. or that S.G. had ever seen him naked. Although S.G.'s brief posttrial statement was inconsistent with some of her testimony, it was also inconsistent with Gehr's defense. Given the extent and nature of the evidence at trial, there is no reasonable likelihood that the trier of fact would have assessed the relative credibility of the witnesses differently had it considered the new

9

information. The trial court did not abuse its discretion in denying the motion for a new trial.

IV

The State concedes that the trial court lacked authority to impose a mental health evaluation as a condition of community custody. RCW 9.94A.703(3)(c) authorizes the trial court to require an offender's participation in "crime-related treatment or counseling services" as a condition of community custody. See RCW 9.94A.030(10) ("crime-related prohibition" is one that "directly relates to the circumstances of the crime for which the offender has been convicted").

But nothing in the record suggests that Gehr had mental health issues that contributed to the crime. See State v. Jones, 118 Wn. App. 199, 202, 76 P.3d 258 (2003) (striking alcohol counseling and mental health treatment conditions). We accept the State's concession that the mental health evaluation condition must be stricken.

Gehr's conviction is affirmed. We remand solely with instructions to strike the mental health evaluation condition.

_Dwyer, J._

We concur:

_Mann, ACJ_     _Leach, J._