IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In re the Detention of | ) | No. 79580-5-I |
| | ) | |
| FRANKLIN ABELLERA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |
| | ) | |

ANDRUS, A.C.J. – Franklin Abellera, who was found by a jury to be a sexually violent predator, appeals the denial of his motion for a new trial under CR 60(b)(3), claiming that newly discovered evidence, the audio portion of a surveillance video disclosed to Abellera in 2009, refuted the State's contention that his most recent rape conviction was the result of a mental abnormality. The trial court did not abuse its discretion in finding that Abellera could have discovered the audio before trial, that the evidence was not material, and that the evidence would not have changed the outcome of his trial. We therefore affirm.

## FACTS

On September 11, 2014, the State filed a petition to commit Franklin Abellera as a sexually violent predator (SVP) under chapter 71.09 RCW. On November 21, 2017, a jury found Abellera to be an SVP, and the trial court issued an Order of Commitment releasing Abellera to the custody of the Department of Social and Health Services "for control, care and treatment pursuant to

Citations and pin cites are based on the Westlaw online version of the cited material.

RCW 71.09.060 until further order of this court." Abellera appealed his commitment and this court affirmed in August 2019. In re Det. of Abellera, No. 77812-9-I (Wash. Ct. App. Aug. 12, 2019)[1]. Our Supreme Court subsequently denied review. In re Det. of Abellera, 194 Wn. 2d 1018, 455 P.3d 130 (2020).

This court summarized the facts leading to Abellera's commitment order:

In 1981, the State charged Abellera with 10 sex offenses committed against six different women. Abellera pleaded guilty to burglary in the first degree, indecent liberties with forcible compulsion, assault in the second degree, and rape in the second degree. The trial court suspended Abellera's sentence on the condition that he complete an inpatient sex offender treatment program at Western State Hospital. In 1989, program staff recommended that the court determine Abellera successfully completed the program and release him.

In April 1990, after his discharge from the program, Abellera began a job at a bakery. During this time, Abellera engaged in behavior that increased the risk of reoffending—such as consuming pornography, drinking alcohol, and hiring prostitutes.

In 2009, Abellera drove to a high prostitution area to hire a prostitute. A woman, K.W., approached Abellera and asked him for a ride. Once K.W. was in the car, Abellera drove to a dead-end street and raped her.

On May 27, 2010, Abellera pleaded guilty to rape in the third degree and assault in the second degree. The court sentenced Abellera to five years' imprisonment.

On September 11, 2014, while Abellera was serving his sentence, the State filed a Petition for Commitment as a Sexually Violent Predator.

Abellera's SPV [sic] trial began in 2017. The State presented an expert, Dr. Dale Ray Arnold, who diagnosed Abellera with "other specified paraphilic disorder" and antisocial and avoidant personality traits that exacerbated his disorder. Dr. Arnold summarized the details of six sexual assaults Abellera committed in the 1980s and estimated that, in total, Abellera had committed 31 to 35 rapes and attempted rapes. In Dr. Arnold's opinion, Abellera had a mental abnormality such that he would not be able to control his urge to force

---

[1] https://www.courts.wa.gov/opinions/pdf/778129.pdf.

a woman into nonconsensual sex if presented with the opportunity in the future.

Abellera presented an expert, Dr. Joseph Plaud, who testified that Dr. Arnold's diagnosis was "made up." Dr. Plaud additionally stated that Abellera believed K.W. was a prostitute at the time of the assault. Dr. Plaud opined that the 2009 offense differed so significantly from the 1980s offenses that it did not demonstrate a mental abnormality or lack of volitional control.

The jury reached a verdict finding Abellera to be an SVP. The trial court issued an Order of Commitment.

Abellera, No. 77812-9-I, slip op. at 2-3.

On November 21, 2018, while his appeal was pending, Abellera filed a motion for a new trial under CR 60(b)(3),[2] or in the alternative, for an evidentiary hearing. Abellera claimed that he had discovered new evidence—audio from a 2009 security video of the interior of the convenience store where Abellera picked up K.W. He argued that this audio demonstrated that on the night of the rape, K.W. was working as a prostitute and that Michael Preston, the man accompanying K.W., was her pimp. Abellera's defense at trial was that he had sex with K.W. and then assaulted her when he suspected he was followed by Preston and being set up to be robbed by the two of them. But at the time of trial, he had no evidence to prove that K.W. had actually agreed to sex for money, other than his own

---

[2] CR 60(b)(3) states:

> (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . .
>
> (3) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(b)

testimony. Abellera argued that this audio proved that his encounter with K.W. was simply a "prostitution agreement gone wrong," rather than the result of an uncontrollable urge to engage in sexual violence.

The 2009 surveillance footage at issue showed an exchange that occurred between Preston and the convenience store clerk inside the store. In the audio, not previously accessed by any party, Preston can be heard trying to sell sex from one of his "girls" to the clerk:

> Preston: Hey. You want a girl?
> Store Clerk: Tonight?
> Preston: . . . You know that little blonde one?
> Store Clerk: (Inaudible)
> Preston: Starting at 250.
> . . .
> Store Clerk: Not today.
> . . .
> Preston: What about a hundred bucks?
> . . .
> Store Clerk: Not today.
> Preston: Oh, okay.
> Store Clerk: I will come talk to you.
>
> [Preston exits, and later re-enters the store. Preston gives clerk some change.]
> . . .
> Preston: Hey, check it out. I got one of my girls out working. Can I get a pack of cigarettes until she gets back, then I will give you the rest of the money?
> Store Clerk: I can't do that.
> . . .
> Preston: But she's out there getting some money right now.

The "little blonde one" to which Preston referred is not identified by name. Abellera contends that Preston was referencing K.W.

Abellera conceded that the State produced this surveillance video to his criminal attorney at the time he was charged with and pleaded guilty to rape and

- 4 -

assault in 2009 and that the audio file was a part of what had been disclosed. But he maintained that the audio was "unavailable" because counsel could not access it with the media players on counsel's computers. The State argued that Abellera's counsel in the SVP case could have discovered it before the 2017 SVP trial. It thus contended that Abellera could not demonstrate the evidence was "newly discovered" under CR 60(b)(3).

On January 2, 2019, the trial court denied Abellera's motion for a new trial and for an evidentiary hearing. It found that the surveillance audio was not newly discovered evidence, that the audio could have been found before trial with due diligence, that the evidence was not material to the issues in the SVP trial, and that it was cumulative evidence. It further found that the audio evidence would not have changed the result at trial. Abellera unsuccessfully moved for reconsideration of the trial court's January 2 order. Abellera appeals.

<u>ANALYSIS</u>

We review a trial court's decision on a motion to vacate under CR 60 for abuse of discretion. <u>Jones v. City of Seattle</u>, 179 Wn.2d 322, 360, 314 P.3d 380 (2013). A trial court abuses its discretion if its decision is unreasonable or based on untenable grounds or reasons. <u>Wagner Dev. Inc. v. Fid. & Deposit Co. of Maryland</u>, 95 Wn. App. 896, 906, 977 P.2d 639 (1999). "Under CR 60(b)(3), a judgment may be vacated if a party produces new evidence that it could not have discovered using due diligence in time to move for a new trial." Id.

The party seeking a new trial under CR 60(b)(3) must establish that the evidence "(1) would probably change the result if a new trial were granted, (2) was

discovered since trial, (3) could not have been discovered before the trial by the exercise of due diligence, (4) is material, and (5) is not merely cumulative or impeaching." Jones, 179 Wn.2d at 360. "The absence of any one of the five factors is grounds for the denial of a new trial." State v. Williams, 96 Wn.2d 215, 223, 634 P.2d 868 (1981).

The trial court did not abuse its discretion in finding that the audio could have been discovered by Abellera's counsel before trial through the exercise of due diligence. Whether an attorney has exercised due diligence is a question of fact to be determined from the circumstances of the case. Roe v. Snyder, 100 Wash. 311, 314, 170 P. 1027 (1918). When a decision to deny a CR 60 motion hinges on the trial court's resolution of a question of fact, our review for an abuse of discretion turns on whether the trial court made a decision supported by the record and whether its ultimate decision was reasonable or within the realm of acceptable choices. Mitchell v. Wash. State Inst. of Public Policy, 153 Wn. App. 803, 822, 225 P.3d 280 (2009).

The factual record supports the trial court's finding that the evidence could have been discovered before trial. Abellera's newly appointed counsel, Kathryn Ross, conceded below that Abellera's SVP attorneys had the video in their possession because the State produced it during discovery. Ross argued that the audio file was inaccessible to these attorneys because when the video was played using incompatible media players, the only audible sound was static. Although it was obvious from the video that Preston and the store clerk were talking to each

other, Ross argued that there was no decipherable audio and the static "did not suggest to me, immediately, that there was any speaking in there."

Ross informed the trial court that she received an email from Dr. Dan Yanisch, the psychologist performing Abellera's annual review at the Special Commitment Center, questioning Abellera's credibility and that of K.W. over whether he had in fact raped her. Ross stated that Dr. Yanisch's email made her "very determined" to find "anything." When she reviewed the video, however, her court-issued computer used an outdated version of Windows Media Player to play the video. At that point, she realized that there was audio on the video, although of poor quality. She then asked a video expert to enhance the audio quality. Only then did she discover that Preston could be heard offering to sell the store clerk one of his "girls," presumably K.W., in exchange for money.

We have no reason to doubt Ross's testimony as to how and why she uncovered the existence of the audio. But even if we assume that Abellera's trial counsel did not discover the audio file before trial because of a media player incompatibility, the record does not support the contention that Abellera's trial counsel could not have discovered the audio file if they had exercised the due diligence Ross demonstrated. Neither of the trial attorneys submitted declarations as to whether they watched the video, attempted to decipher the static when they could see Preston and the store clerk verbally communicating with one another, or tried an alternate media player like Ross did. There is actually no evidence to demonstrate what steps Abellera's SVP counsel took to investigate Abellera's version of events surrounding his interaction with K.W. Although Ross testified

that she talked with the SVP trial attorneys and that one of them told her that their defense strategy would have been different had this audio evidence been uncovered earlier, this evidence does not establish that they exercised due diligence in investigating possible strategies to the SVP allegations.

Abellera contends that his SVP attorneys did not have a duty to investigate the surveillance footage because the State erroneously and "unequivocally" represented to them and the trial court that there was no evidence supporting his claim that K.W. was a prostitute. He compares his case to Kurtz v. Fels, 63 Wn.2d 871, 389 P.2d 659 (1964), in which a plaintiff sued for negligence following a car accident, claiming, among other injuries, that the accident caused her to experience fainting spells. The jury found in favor of the plaintiff and awarded damages. Id. at 872. The defendant filed a motion for a new trial when it discovered evidence from the plaintiff's former husband and numerous friends that the plaintiff suffered from fainting spells for years before the accident. Id. at 873. The plaintiff argued this evidence could have been found before trial with due diligence. Id. The trial court disagreed and granted the defendant's request for a new trial, concluding that the defendant had no reason to question the plaintiff who, with firsthand knowledge, testified under oath that she had not suffered from fainting spells before the accident. Id. at 875. The Supreme Court agreed, reasoning that counsel had the right to rely on the plaintiff's clear and unambiguous testimony given under oath and, "in the exercise of reasonable diligence, is not required to look behind the statements." Id.

This case is distinguishable from <u>Kurtz</u> because Abellera's SVP counsel had notice of circumstantial evidence that K.W. was in fact a prostitute. They had sworn statements from witness Deborah Herman, who called 911 when she found K.W. wandering the streets after she had been raped and who accompanied K.W. to the hospital. Herman told police she thought K.W. was a prostitute because of her outfit, and because K.W. had a purse filled with condoms.

And counsel had notice from Abellera himself that K.W. had offered him sex for money. In an interview with the State's expert, Dr. Arnold, Abellera insisted that he did not rape K.W. but admitted to assaulting her. Abellera's SVP counsel also knew that Abellera chose to plead guilty to the rape even though he protested his innocence. Abellera told Dr. Arnold in a 2016 interview that he chose to plead guilty to the rape because he knew he was going to go to prison for the assault and "because of [his] past and because of the preponderant weight of the [evidence]," he felt taking the plea was in his best interest.

The State agreed that Abellera could testify about his version of events. The record from Abellera's direct appeal reveals that the State played Abellera's video deposition for the jury and learned of his version of events, and that the State referred to this testimony in closing argument. Abellera's expert, Dr. Plaud, reiterated Abellera's version of events to the jury, and testified that, based on this information, he felt the 2009 offense was strikingly different from the rapes Abellera committed in the early 1980s:

> Mr. Abellera says, and he's consistent about this, I'm not saying he's right or if it's true, but what he says is she was a prostitute, something went wrong, somebody else showed up, I wasn't going to pay her, but there was a video of me kicking her out of the car, and I did

maybe hurt her when I tried to get her out of my car. So that's his version, which would not be consistent with what he was doing in the 80's, even though technically it's a sexual offense. So functionally it's different.

Abellera's trial attorneys knew of their client's version of events before trial because they discussed it with the court in evaluating the relevance of the evidence:

We have no intent of eliciting testimony that this woman was a prostitute. There's no – we have no evidence that she was a prostitute.

It's not really relevant to the issue of whether or not our client committed [an] offense against her and whether or not being a prostitute makes our client more or less likely to be a sexually violent predator, because, really, that's the only issue here. And so we're not intending to infer one way or another that that is actually true with respect to this woman.

Unlike the defendant in Kurtz, Abellera's attorneys were aware of the factual contention that K.W. had offered Abellera sex in exchange for money. Abellera's attorneys had the opportunity to investigate that factual issue to determine if it was credible or relevant, and they ultimately concluded it was not probative of the issue of whether Abellera was a sexually violent predator.

Had Abellera's SVP counsel deemed Abellera's version of events to be credible, counsel could have and likely would have investigated Abellera's contention that K.W. was a prostitute and that Preston was her pimp. It appears on this record that Abellera's CR 60 counsel only needed to play the video on a different media player to realize that it contained audio. This evidence supports the trial court's finding that the evidence could have been discovered with due diligence.

- 10 -

The record also supports the trial court's finding that K.W.'s status as a prostitute was immaterial as to whether Abellera was an SVP. Abellera's SVP counsel conceded as much at trial. Det. of Abellera, slip op. at 7. The State reminded the trial court of this concession during the CR 60 hearing.

Even if defense counsel had not conceded this point, the trial court's determination of immateriality is supported by the record. Dr. Arnold opined that Abellera suffers from a mental abnormality or personality disorder that makes it likely he would engage in predatory acts of sexual violence. It is unclear how the fact that one of Abellera's victims was a prostitute would change that opinion. Dr. Arnold reviewed Abellera's entire criminal history, including sexually motivated crimes committed between 1980 and 1981, resulting in 10 separate criminal charges involving six different women. Dr. Arnold also reviewed the 2009 rape based on K.W.'s account of events and Abellera's admission in the guilty plea that he forced himself onto K.W. despite her repeated requests for him to stop. He considered Abellera's admissions of "sexually deviant fantasies and urges to rape, his pattern of committing or attempting to act upon his urges, [and] the fact that one of his prior rapes occurred in a car," as well as K.W.'s description of the 2009 crime to reach his conclusions. There is nothing in the audio that related to Abellera's mental abnormality or personality disorder, his past sexual violence, his rape of K.W., or Dr. Arnold's opinion that Abellera is likely to commit sexual violence in the future. This record supports the trial court's conclusion that the evidence was not material.

Finally, based on this record, the trial court also reasonably determined that the audio would not have changed the outcome of the trial. Abellera's version of the 2009 rape was presented to and rejected by the jury. In closing arguments, the State dissected Abellera's story and explained to the jury why it made no sense. First, Abellera pleaded guilty to rape, apologized to K.W. at his sentencing hearing, and never filed a motion to withdraw his plea. Second, K.W. had no criminal history or contact with law enforcement for prostitution. And finally, Abellera's story that K.W. agreed to have sex with him for money did not make sense because Abellera admitted that he lacked funds to pay her, and he contended K.W. agreed to let him go to an ATM to get cash afterward, a difficult proposition to accept because "prostitutes don't accept IOUs." Even if K.W. were a prostitute, the State effectively argued that this fact would be irrelevant, noting that "just because someone's a prostitute doesn't mean they can't get raped." The State also explained why Abellera's robbery conspiracy made no sense either: if K.W.'s pimp had followed Abellera as he drove away with K.W., with plans to rob him, why did K.W. have to walk alone in the street looking for help after Abellera pushed K.W. from his car? And even if K.W. was a prostitute and agreed to have sex for money, it did not explain why Abellera felt he had to, and admitted to, forcing her to have sex against her will with sufficient force to cause K.W. to sustain vaginal injuries, a point that the State argued to the jury.

The trial court did not abuse its discretion in concluding that the audio, even if it supported Abellera's story that K.W. was a prostitute, would have had no effect on the outcome of the trial. The trial judge who denied Abellera's motion for a new

trial also presided over the SVP jury trial and had the opportunity to hear all the evidence. We defer to a trial court's assessment of the evidence because "the trial judge who has seen and heard the witnesses is in a better position to evaluate and adjudge then can we from a cold, printed record." State v. Hawkins, 181 Wn.2d 170, 179, 332 P.3d 408 (2014) (quoting State v. Wilson, 71 Wn.2d 895, 899, 431 P.2d 221 (1967)).

We thus conclude that the trial court did not abuse its discretion in denying Abellera's CR 60(b)(3) motion. We similarly deny Abellera's request for an evidentiary hearing.

Affirmed.

Andrus, A.C.J.

WE CONCUR:

Chun, J.

Appelwick, J.